Mr. Chief Justice Sharkey
delivered the opinion of the court.
John Oliver, in his lifetime, sold an unexpired term in certain lots in the town of Columbus to Morse & Baldwin for $4000. He took there writings obligatory, and a mortgage on the premises to secure the payment. After Oliver’s death, Bibb took out letters of administration, and the writings obligatory and mortgage came into his possession, and he received payment of the note first due. He made a final settlement iu 1837, and was discharged from his administration; two notes, however, remained unpaid. Bibb was then appointed guardian of the minor children of Oliver, and still held the two notes and the mortgage, and in that capacity received payment of one of the notes. In 183S, Bibb ceased to be guardian, and the complainant, George R. Clayton and one Hoiderness, were appointed, and received from Bibb the writing obligatory due in 1838, and the mortgage. They, it seems, obtained judgment on the writing obligatory in 1840, having sued in the name of Oliver for their use, but failed to make the money by execution. In 1844, Clayton administered on the estate of Oliver, and in that capacity files this bill to foreclose the mortgage.
The foregoing statement shows the ground of the first objec *380 tion, which is, that Clayton cannot maintain this suit as administrator de bonis non, because Eibb, the first administrator, had possession of the writing obligatory and mortgage, and fully administered in this respect; and that Clayton and Holderness received the note and mortgage as the property of their wards, and having obtained judgment, cannot now be permitted to resort to the mortgage.
It is true that an administrator de bonis non has a right only to such goods, chattels, and credits, as may remain unadministered, but had there been such an administration, in regard to this debt, as to preclude the right of the administrator de bonis non ? It is certainly very clear, that there was no such administration in reference to this debt as to change its character from an indebtedness to the estate. The possession of the evidences of a debt is not an administration. The possession of the guardians did not change the character of the indebtedness; the legal right never was in them. It is immaterial who may have the possession of a note given to a deceased person; as long as it remains uncollected, or undisposed of by legal means, it belongs to the estate, and the administrator de bonis non- may maintain suit upon it. Kelsey v. Smith, 1 How. 68. We do not very well understand how Clayton, as guardian, could have maintained a suit at law on this writing obligatory, but that is not material; it does not preclude him as administrator from proceeding on the mortgage. As this writing obligatory was payable to the deceased, its payment could only be enforced by an administrator.
The next objection is, that the note does not bear interest on its face, but the account includes interest from its date, and the decree is so made, because, by the mortgage, it is provided that it should bear interest from date. The mortgage, though but a collateral security, is the foundation on which the jurisdiction of the court of chancery rests. In this proceeding the notes are immaterial; the relief is to be given on the face of the mortgage. If it describe the debt intended to be secured by it, that is sufficient, even though no note be given. It is taken to secure the payment of the debt; the note is but evidence of the debt. *381 Besides, we see no reason why the parties should not have provided by the mortgage for interest on the debt, although the writing obligatory did not call for interest.
In the next place it is said the acknowledgment, on which the mortgage was admitted to record, was insufficient, and the mortgage cannot be set up against the present holders of the lots, who are all bona, fide purchasers. The acknowledgment is not in the precise words prescribed by the statute, but the general rule that a prescribed form must be followed does not apply, because the statute only requires that the certificate of acknowledgment or of proof shall be in the form, or to the effect therein prescribed. This certificate of proof, by a subscribing witness, is in effect sufficient. The certificate does not state that the witness subscribed his name in the presence of the grantors, or that he saw the other subscribing witness sign the same in their presence. But it does state that the deed was signed, sealed, and delivered, in his presence, and also in the presence of R. Evans, the other subscribing witness thereto. It is thus substantially stated, tlyat the two witnesses subscribed in the presence of the grantors and in the presence of each other.
To be a witness to an instrument is to attest to its execution. One who does nbt attest is not a witness within the meaning of the word, as it is used in the statute. It is said that these certificates should be liberally construed; that it is neither the duty nor the inclination of courts, where substance is found, to jeopardize titles in any way depending upon them, by severe criticisms upon their language. 3 Phil. Ev., Cow. & Hill’s Notes, 1247, 1248.
In the next place, it is said the mortgage lien was lost by the Y great delay to enforce it. The debt was only due in 1838, and this bill was filed in 1846. Even the remedy at law on the writing obligatory was not barred, and surely the mortgage ought to continue in force as long as the debt it was taken to secure. There is no statute which prescribes its duration as a lien, and we cannot say that a delay of eight years would destroy the lien.
The next question raises the validity of certain leases made *382 by the trustees of Franklin Academy for two of the same lots. The counsel have submitted as the evidence in the case an agreed state of facts. From this it seems that all the defendants derived title, either directly or remotely, from the mortgagors. Butterworth, however, also claimed to hold lot five by lease from the trustees of Franklin Academy, long subsequent in date to the mortgage; and Ottley set up a title of the same kind. The validity of these leases is maintained on the ground, that the term of Oliver was forfeited for non-payment of rent, and that consequently the trustees had a right to make new leases. This power is denied, because, as it is said, there was no entry after the breach of conditions. This question is easily answered. In the first place, it has not been shown that Oliver held subject to a condition. The lease to him is not set out. We cannot say that there was a forfeiture, unless the title and condition are before us. The usual mode of taking advantage of a breach of condition for the payment of rent, is by action of ejectment after actual demand of the rent in arrear. 3 Cruise, 300. But the question admits of another answer. The under-tenants may have been bound for the annual rent. If so, they could not submit to a forfeiture, take a new lease, and set it up against their original lessor. It is competent for parties to stipulate for the payment of rent as they may think proper. Now, as neither the original lease to Oliver, (if he held by lease,) nor the leases to defendants from him are before us, we cannot decide on the question of forfeiture. The answer of Ottley alludes to ■this question, but that is not evidence; nor are counsel sufficiently distinct in their arguments to give us full information on the subject. In the agreed statement of facts it is not found. The construction and effect of the lease to Oliver was a matter of law, and it should have been produced. We cannot decide that á right has been forfeited, until we know what that right is.
But the decree was erroneous in directing the sale to be made for cash. The statute directs that such sale shall be made on a credit of six months. Hutch. Code, 770, § 4. Yet it can be made for cash, or upon longer credit, if the parties desire it. Ib. *383 773, art. 17, § 3. As there were four distinct lots, the decree should have directed a sale of only so many as was necessary. As the decree is right except in this particular, it may be corrected in this court.
Judgment reversed, and decree directed to conform to this opinion.