EDWIN D. McGUINNESS, Administrator *de bonis non, vs.* PATRICK
WHALEN.

An administrator *de bonis non* may sue upon a contract made with the original executor
or administrator, if the damages recovered will be assets of the estate to be admin-
istered.

An administrator sold realty at auction, and the purchaser failed to complete the pur-
chase, whereupon the administrator sold the realty again at auction, and for a less sum
than that bid by the purchaser at the first sale.

*Held,* that an administrator *de bonis non,* successor in trust of the administrator, could
maintain an action against the purchaser for his default in not completing the pur-
chase at the first sale.

ASSUMPSIT. Heard by the court, jury trial being waived.

The former proceedings in this case are reported in 16 R. I.
558.

*February* 13, 1892. MATTESON, C. J. This is an action of
*assumpsit* in which the plaintiff, as administrator *de bonis non* on
the estate of John Charlton, deceased, sues to recover damages for
the breach of a contract of sale. Jury trial was waived, and the
case was tried to the court. The facts are as follows: On January
13, 1885, William W. Nichols, at that time administrator *de bonis
non* on the estate of the deceased, was, on his petition, authorized
and empowered by the Municipal Court of Providence to sell at
public auction all the right, title, and interest which the deceased
had at his death in and to certain real estate situated on the south-
erly side of Orms Street, in Providence. Thereupon Nichols, as
such administrator, duly advertised all the right, title, and interest
of the deceased at his death in the real estate mentioned, for sale
at public auction on the premises, on February 28, 1885, at 12
o'clock, noon. In pursuance of the power granted to him as stated,
and in accordance with the advertisement, Nichols, as such admin-
istrator, at the time and place specified, through George H. Burn-
ham, a duly authorized auctioneer of Providence, sold to the de-
fendant, who was the highest bidder at the sale, all the right, title,
and interest of the deceased at his death in and to said real estate
for $3,100. By the conditions of sale, an administrator's deed in
the usual form was to be delivered to the purchaser at the office of
the auctioneer on March 14, 1885, at 10 o'clock in the forenoon.
A deed from Nichols, as administrator as aforesaid, to the defend-

ant and his wife, whom he had requested should be joined with him as a grantee, was prepared and ready for delivery as stipulated in the conditions of sale ; but the defendant did not come to take the deed, and, though it was afterwards tendered to him, he declined to take it and refused to pay the purchase-money. Subsequently Nichols, as such administrator, advertised anew the right, title, and interest of the deceased at his death in said real estate, for sale at public auction on May 6, 1885, at 12 o'clock, noon, on the premises, and, in pursuance of said power, in accordance with the advertisement last named, sold through said Burnham, as auctioneer, at the time and place specified in the advertisement, the right, title, and interest of the deceased, so advertised, to William H. Washburn for $2,150, and thereupon, in accordance with the terms of sale, executed and delivered to Washburn an administrator's deed, in the usual form, of the right, title, and interest of the deceased in said real estate at his death, and received from Washburn the sum by him bid therefor, viz., $2,150. Washburn in making the purchase acted as agent for the defendant, and subsequently by deed dated July 1, 1886, conveyed the property by quitclaim deed to the defendant.

On November 21, 1887, the plaintiff was appointed administrator *de bonis non* on the estate of the deceased in place of Nichols, who had been removed from that office, and on September 11, 1888, brought this suit to recover the difference between the sum bid at the first sale and the sum bid at the second sale.

The defendant takes the point that the plaintiff cannot maintain the action, because there is no privity between the plaintiff and his predecessor, Nichols, and, therefore, as the contract sued on was made with Nichols, he alone can sue for its breach.

We do not think the point is well taken. The early cases, it is true, proceeded upon the principle that contracts made with an administrator were personal to him, and that he must sue upon them in his own right, and not in his representative capacity; but the later cases hold that where the money to be recovered would be assets of the estate, an executor or administrator may sue in his representative capacity, and therefore, if the original administrator die, an administrator *de bonis non*, who succeeds to all the rights of the original administrator in the estate not administered,

may also sue upon the contract. *Elliott* v. *Kemp*, 7 M. & W. 306; *Catherwood* v. *Chabaud*, 1 B. & C. 150; *Hirst* v. *Smith*, 7 Term Rep. 178; *Moseley* v. *Rendell*, L. R. 6 Q. B. 338; *Sullivan* v. *Holker*, 15 Mass. 374; *Sheets* v. *Pabody*, 6 Blackf. 120; *Morse et al.* v. *Clayton*, 21 Miss. 373; *Mathews, Adm'r*, v. *Meek et al.* 23 Ohio St. 272. And compare *Newhall* v. *Turney*, 14 Ill. 338, 340, 341. The test appears to be, *whether the proceeds of the claim, when recovered, would be assets.* In *Catherwood* v. *Chabaud*, 1 B. & C. 150, 153, Abbott, C. J., remarks: " It was clearly established by the evidence that the bill in question was given to S. C. as the administratrix of J. C. for money due to her intestate; she took it as assets, and, if she had received the money, that must undoubtedly have been accounted for to his estate. The money not having been received in her lifetime, the bill remained as a part of J. C.'s estate, and the right to it devolved upon the person who afterwards became his representative. . . . It has been decided in a variety of modern cases that an administrator may sue as such upon a promise made to him in his representative character, and that principle governs my opinion in the present case; for where the cause of action is such that the first administrator may sue in his representative character, the right of action devolves upon the administrator *de bonis non* of the intestate." And see remarks of Bailey, Holroyd, and Best, JJ., in the same case. A more recent case is *Moseley* v. *Rendell*, L. R. 6 Q. B. 338. The defendant had employed Hepburn, a coach-builder, and there was due the latter at his decease on September 27, 1869, £47 16*s.* Hepburn's widow took out administration, but died in December following. In the interval between the taking out of administration on October 21, 1869, and her death, the administratrix carried on the business on the same premises, and did work for the defendant to the amount of £18. The work consisted generally of repairs to carriages, and was done with intestate's tools and materials, with the exception of a shaft. After the death of the widow the plaintiff wife took out administration *de bonis non* on Hepburn's estate January 14, 1870. On these facts it was objected that the cause of action was personal to the widow, and passed to her representative, and not to the representative of the original intestate; but it was held that the proper inference was

that the first administratrix had carried on the business for the benefit of the estate; that the money recovered would, therefore, be a part of the assets of the intestate, and consequently that the action was rightly brought by the administratrix *de bonis non.* Cockburn, C. J., p. 342, clearly states the principle applicable to this class of cases. "It appears to me," he says, "that the plaintiff, as administratrix *de bonis non*, is the proper person to sue, because, although the promise was made to the widow and the defendant is not her representative, yet the promise was made to the widow, not in her personal capacity, but as administratrix of her husband. It has long ago been laid down that, though the executor of an executor represents the original testator, yet that rule does not apply to the administrator of an administrator, and that consequently, when the estate of a deceased person has been left unadministered, it is necessary, in order to complete the administration, to take out administration *de bonis non.* Now, if the promise was made to the original administratrix as administratrix, the proceeds of the action would be assets, and the present plaintiffs are the proper persons to sue." In this State the rule that the executor of a deceased executor represents the original testator has been annulled by statute. Pub. Stat. R. I. cap. 184, § 23.

The contract in suit was a contract with Nichols, not individually but in his representative character. The damages, when recovered, will be assets of the estate of the intestate. Nichols might have sued for them in his capacity as administrator. He, however, did nothing in relation to the claim, and upon his removal, and the appointment of the plaintiff as his successor, it remained as an asset of the estate wholly unadministered, and passed, with the right to bring suit upon it, to the plaintiff in his capacity as representative of the intestate.

The defendant also contended that he was not liable, because the auctioneer guaranteed the title to the estate to be good, whereas it was in fact defective. In support of this contention the defendant himself testified, and called as witnesses, in corroboration of his testimony, his son and a neighbor who were present at the sale. The defendant and these witnesses state that the auctioneer said that the title was good as gold, and would be guaranteed to any purchaser. This was denied by the testimony of the auctioneer.

The burden is upon the defendant to establish the guaranty by a preponderance of evidence. We are not convinced that the guaranty was made as the defendant claims. The sale as advertised, and as shown by the conditions of sale upon the auctioneer's book, was simply of the right, title, and interest of the deceased, and the deed, as also shown, was to be an administrator's deed in the usual form, which does not contain covenants of general warranty. Nichols himself did not attend the sale, and it seems to us highly improbable that the auctioneer, in the absence of his principal, and having no interest in the property or in the sale except as auctioneer, should have taken upon himself the responsibility of guaranteeing the title. The defendant and his witnesses state that the alleged guaranty was made in answer to inquiries concerning the title addressed to the auctioneer by one Hennessy, who was present at the sale but has since died; that there was considerable chaffing back and forth between the auctioneer and Hennessy while the sale was progressing. We think it is not improbable that the defendant and his witnesses derived an erroneous impression of what may have been said chaffingly by the auctioneer; or that, with the lapse of years since the sale, they have misrecollected it.

We give judgment for the plaintiff for $1,053.75 and costs.

*Edwin D. McGuinness & John Doran,* for plaintiff.

*Edward D. Bassett,* for defendant.