JAMES CONKLIN, v. ANNIE YATES, FRANK WILLIAMS AND WILLIAM B. SWINFORD *partners as* WILLIAMS & SWINFORD

(Filed September 7, 1905.)

1. EVIDENCE—Transactions with Deceased Persons—Witness Incompetent, When. By the provisions of section 4212, Statutes of Oklahoma 1893, no party shall be allowed to testify in his own behalf to any transaction or communication had personally by such party with a deceased person, when the adverse party is the assignee of such deceased person, where he has acquired title to the cause of action immediately from such deceased person.

2. SAME—Grantor and Grantee. In an action by the grantor to set aside a deed conveying lands in this Territory, against a person who has acquired title to the land in controversy immediately from the deceased grantee of such grantor, such grantor is not allowed to testify in his own behalf to any transactions or communications had by him individually with his grantee, who is deceased, whether such transactions or communications are oral or in writing.

3. SAME—What Constitutes "Transactions" Facts which constitute fraud on the part of a deceased person necessarily include personal transactions or conversations with such deceased person.

4. EVIDENCE—Objections to—Form. An objection to the introduction of testimony, should state the precise grounds of objection; an objection on one ground will not raise other grounds of objection.

5. SAME—Transactions with Deceased Persons—How Proved. Section 4212, Statutes of 1893, does not prohibit the proof of transactions and communications had personally between a party to the suit and the deceased grantee of such person by disinterested witnesses or other competent evidence, other than that of a party to the suit.

6. SAME—Demurrer to Evidence—Presumption. Upon a demurrer to the evidence, the court must consider as true every portion of the evidence tending to prove the case of the party resisting the demurrer, and cannot weigh conflicting evidence.

7. **SAME—Demurrer to Evidence—Presumption.** In order to sustain a demurred to the evidence the court must be able to say, as a matter of law, that the party introducing the evidence has not proved the cause.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before C. F. Irwin, Trial Judge.*

*Cotteral & Hornor,* for plaintiff in error.

*John Devereaux* and *U. M. Jones,* for defendants in error

Opinion of the court by

BEAUCHAMP, J.: This action was commenced by plaintiff in error against defendants in error in the district court of Logan county. The allegations of the petition, so far as necessary are: That the plaintiff is the owner of 160 acres of land in Logan county, of the value of $2000; that two tax deeds had been issued against the land by the county treasurer to M. Yates, which were void; that A. G. Jones was a real estate broker and land agent at Guthrie; that plaintiff being desirous of clearing his title to his land and cancelling these tax deeds, and reposing confidence and trust in Jones, and Jones, who represented to plaintiff that to accomplish this purpose it was proper and beneficial that the plaintiff put the title to the land in Jones' name, plaintiff made a quit claim deed to the land to Jones, as his agent and trustee, without any consideration, relying upon the statements and representations of Jones; that Jones instead of faithfully carrying out his trust, and in order to cheat and defraud the plaintiff out of his land, sued in his own name to cancel said tax deeds, and being successful did, without plaintiff's knowledge or con-consent, make a deed to the land to the defendant, Annie Yates, for a grossly inadequate consideration, so that she

might become the reputed owner thereof, and so that Jones might himself obtain the consideration for the transfer, and that the plaintiff might be deprived thereof, except the sum of $50, which he offered to give to the plaintiff, but which plaintiff refused ; that upon obtaining the said conveyance, and pretending to be the owner thereof, the defendant, Annie Yates, executed a mortgage on the land to and in favor of the defendants, Williams and Swinford, to secure her note in the sum of $500.00; that the defendants, Annie Yates and Williams and Swinford had notice and knowledge of the facts and circumstances of the fraud, and of the want of ownership in and title to the land on the part of Jones and Annie Yates, and notice and knowledge of the plaintiff's title thereto. The prayer of the petition is that Annie Yates be decreed to hold the land as mere trustee of the plaintiff, and be required to convey it to the plaintiff, and that the mortgage of Williams and Swinford be cancelled.

The defendants answered admitting that Annie Yates is in the possession of the real estate in the petition set out, and the defendants, Williams and Swinford, admit that they have a mortgage thereon for the sum of $500 with interest at 12 per cent per annum, and defendant, Annie Yates, further admits that she is and claims to be the owner of said land in fee simple, and except as admitted, the defendants deny generally the allegations in the petition and deny all participation in or knowledge of the alleged fraud, and pray a dismissal of the suit.

The case was tried before the court without a jury, and at the conclusion of the plaintiff's evidence, the defendants separately demurred to the evidence. The demurrers were by the court sustained, and judgment was rendered dismissing the

action at the cost of plaintiff. A motion for a new trial was heard and overruled, and exceptions saved. Plaintiff in error brings the case here by petition in error and case made.

It is agreed by the parties in this case that the plaintiff was the original owner of the land by patent from the government; that two tax deeds were issued by the county treasurer of Logan county to M. Yates; afterwards a quit claim deed was made by the plaintiff for the land to A. G. Jones, January 27, 1902, the consideration named in the deed being one dollar; that on October 6, 1902, Jones brought suit in his own name in the district court of Logan county against Joe M. Yates, administrator of M. Yates and her heirs, to cancel these tax deeds, and which on December 17, 1902, resulted in a judgment cancelling both tax deeds and vesting the title in Jones; that on the same day Jones made a warranty deed for the land to Annie Yates, the consideration named in the deed being $100; that Annie Yates executed a mortgage to the defendants Williams & Swinford to secure her note in the sum of $500, and that subsequent to the commencment of this action, Annie Yates conveyed the land by warranty deed to C. H. Scrutchfield. It is also an admitted fact that A. G. Jones died before the trial of this cause. Therefore, the real issues to be determined by the court at the trial were: First, did A. G. Jones obtain the deed from the plaintiff without consideration, hold the same as agent and trustee for the plaintiff and then, without plaintiff's knowledge or consent, fraudulently transfer the land to Annie Yates with intent to cheat the plaintiff out of the land and proceeds thereof; and second, did Annie Yates and the other parties acquiring their interest by and through Jones have notice of the fraud, so that plaintiff can recover his land as against them?

Complaint is made by plaintiff in error that the trial court "erred in ruling upon evidence offered, and in excluding legal, competent and proper evidence offered by the plaintiff." We will first consider the rulings of the court upon the admissibility of  the evidence, which are  complained of, and pointed out by counsel for plaintiff in error in their brief.

At the trial, the deposition of the plaintiff was offered in evidence, and the defendants objected to the reading of certain letters contained in said deposition in the following form:

"Objected to as incompetent, irrelevant and immaterial, being a communication with a deceased person.

"By the court:   Let the record show the objection is sustained to all statements in the deposition from Jones to the party in interest, and an exception by the plaintiff."

By section 4212, Statutes of Oklahoma 1893, it is provided:

"No party shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where they have acquired title to the cause of action immediately from such deceased person; * * *".

The testimony objected to was with reference to certain letters written by the plaintiff to Jones and received by him from Jones in reference to the quit claim deed and the purposes for which it was made by him to Jones. The record discloses that before the trial Jones died, so that under the plain and express provisions of section 4212 the plaintiff could not be allowed to testify in his own behalf in this case. *Cunningham et al. v. Phillips,* 4 Okla. 169.

Counsel for plaintiff in error argues that the statute forbids only communications had "personally" with the deceased, that is, that the statute only contemplates preventing one party from testifying as to conversations had with the deceased. We do not agree with this contention. The evident purpose of the statute is to prohibit a party testifying in his own behalf in respect to any transaction or communication had with a deceased person individually. To hold otherwise would open the door for the greatest fraud, and this because the lips of his adversary are closed by death, and he cannot be heard to give his version of the conversation. In this case it was not only attempted to prove by the plaintiff that letters had been received by him from Jones, but as well to prove the contents of letters that had been written by him to Jones, and not now in the possession of the plaintiff; and we think this circumstance alone sufficiently answers the argument of counsel for plaintiff in error, for if the plaintiff was permitted to testify with reference to the letters that had been written by him to the deceased and the letters that were received by him in answer thereto, then the plaintiff would be permitted to testify simply as to his version of the transactions, without any possibility of denial from the deceased party. Counsel cites us to but a single authority, the case of *Willis v. Wood,* 28 Kans. 400, where in the opinion by Mr. Justice Brewer, in speaking of the statute under consideration, he used the following language:

"That statute plainly contemplates preventing one party from introducing in evidence conversations had with the ancestor of the adverse party, and this because the lips of such ancestor closed by death cannot be heard to give his version of the conversation."

The evidence sought to be introduced in that case was of conversations had between the deceased and the witness personally, and the language used had reference only to the particular facts of that case, and it could not possibly be construed that it was meant in that case to say that the party should be permitted to testify in his own behalf in respect to all transactions and communications had by such party with a deceased person except mere conversations. We think a fair construction of the statute is to render such party incompetent as a witness to testify to any and all transactions or communications had by such party with a deceased person individually. A. & E. Ency. of Laws, 2nd. ed., vol. 30, pp. 1027, 1028, 1029 and notes.

In the case of *Bryant v. Stainbrook,* 40 Kans., 356, it is said:

"Where the original payee of a note brings an action thereon against the administratrix of a maker, he is incompetent to testify that he saw the maker sign it when the execution of the same was a part of the trade between the maker and himself; but when the execution of the note is established fully by other and competent evidence, the error in permitting plaintiff to testify is not reversible."

And in the opinion after quoting the statute it is said:

"This statute has reference as much to any transaction had with a deceased person as it does to any communication received from him; surely the execution of this note was a transaction had personally with the deceased, and clearly falls within the prohibition of the statute." *Auchampaugh v. Schmidt,* 72 Iowa, 656; *Wilson v. Simpson,* 67 Id. 253; *Holcomb v. Holcomb,* 95 N. Y. 316.

The statute makes no exception in a case where fraud is an issue. The facts which constitute fraud on the part of a

deceased person necessarily include personal transactions or conversations with him. *Carr v. Fife et al.*, 44 Fed. 713.

Again it is argued by counsel for plaintiff in error that the objection in the form made did not go to the competency of the witness, but only to the competency of the testimony itself, and cites numerous authorities to the effect that the precise grounds of objections must be stated and that the general objection will not raise the question as to the admissibility of evidence which might be objectionable on some specific ground, and that an objection on one ground will not raise other grounds of objection. The correctness of this position will not be disputed, and while the objection might have been more specific, there is no question from the record in this case but that it was understood by both counsel and the court as an objection to the competency of the witness. The trial court committed no error in excluding all statements in the deposition by Jones to the plaintiff.

The plaintiff offered in evidence certain letters, which purported to have been written by A. G. Jones, the signature having been identified as the signature of A. G. Jones, by the witness U. M. Jones, which letters read as follows:

"Guthrie, Okla., Dec. 17, 1901.
"James Conklin, Esq.,
"Henoelton, N. Y.
"Dear Sir:—
"I make a specialty of looking after the property of nonresidents, and having been here ever since I located the land office acre for the United States before the opening of Oklahoma to settlement, am able to know almost every possible buyer. If the property is rental property, I take special pains to keep the same rented to good tenants.

"I am often able to benefit owners of the property in the payment of their taxes. Owners are often imposed upon by

Vol. 16—18

excessive valuations and assessments of taxes, sidewalks and shade tree tax.

"If property is vacant lots, some kind of light crop should be planted on them as this keeps down the weeds and improves their appearance. This can be done without cost to the owner.

"The city sometimes orders weeds cut on vacant lots and charges the expense up to the lots.

"Write me description and price of your property. You will be satisfied with any business I may be able to do for you. I make no charges for information.

"Yours respectfully,

"A. G. Jones."

"Guthrie, Okla., Dec. 17, 1901.

"James Conklin, Esq.,
    "Henoelton, N. Y.

"Dear Sir:—

"I wrote you a letter in regard to a tract of land that you once owned in Oklahoma and not getting any answer, thought I would write you again.

"If this is received by you kindly answer it that I may know what you desire in the matter, if any thing is to be done the sooner the better in which case I can give you the very best reference as to business qualifications and fair dealing. Would be pleased to have you write Ex-Gov. Barnes now president of Logan County Bank, about me. Kindly write me any information you have. I believe I sent you a blank quit claim deed to execute. A quit claim only transfers any interest you may have in anything, nothing more, and with this quit claim deed a settlement can be made with the party holding the tax deed and an answer to this may repay you for your trouble.

"Fraternally yours,

"A. G. Jones."

"Guthrie, Okla., October 16, 1902.

"James Conklin, Esq.,

"Henoelton, N. Y.

"Dear Sir:--

"In regard to your old claim here, I employed a lawyer at a fee of $50.00, commenced suit and was expecting to get case through the next term of court. But the owner of the place under two tax deeds died and this put a new aspect to the case as there are some ten heirs and I don't know when and how I will come out. Now I have a chance to settle with the administrator so as to give you $50.00 and owing to the uncertainty of the case I enclose you receipt for your signature which you can sign and send to the Guthrie National Bank, instructing them to deliver to me upon the payment of the $50.00, or if you send receipt direct to me I will mail you exchange by return mail for the amt. which will save any collection fee.

"Hoping the same may be found satisfactory, I am,

"Fraternally yours,

"A. G. JONES."

"Henoelton, New York, Oct. ——, 1902.

"Received of A. G. Jones, fifty dollars in full of all claims and demands for my quit claim deed to the s. e. 1-4 of sec. 9, tp. 16, r. 1, w. I. M.

——— ————"

The defendants objected to all and each of the letters being received in evidence as being incompetent, irrelevant and immaterial and being communications from the deceased to the plaintiff, which objections were by the court sustained, to which rulings of the court the plaintiff excepted and now complains.

It must be presumed that the trial court sustained the objection for the reason that the letters were communications

from a deceased person, for it cannot be questioned that the evidence was competent, relevant and material. U. M. Jones, the witness who identified the signature to the letters as that of A. G. Jones, was not a party to the suit, and had no interest in the result of it as disclosed by the record, other than that of an attorney for the defendants. The statute does not provide that no evidence shall be received of transactions or communications between a party and a deceased person but only provides that no party shall be allowed to testify in his own behalf in respect to such transactions or communications. It is clearly not the purpose of the statute to prohibit testimony as to transactions and communications between a party and a deceased person, but only that a party with whom the transactions or communications are had should not be a competent witness to testify to such matters. The witness, U. M. Jones, being a disinterested party, and having identified the signatures to the letters as the signature of A. G. Jones, his testimony could not be excluded for the reason that they were communications between A. G. Jones and the plaintiff. The letters being identified as those of A. G. Jones will speak for themselves; and that the transactions and communications may be proven by other witnesses than the party with whom such transactions or communications were had, cannot be questioned. *Wells v. Wood, supra; Bryant v. Stainbrook, supra; Muir v. Miller,* 87 Iowa, 700.

To hold otherwise would be to exclude all evidence of transactions with deceased persons, when the adverse party in an action was the representative or assignee of such deceased person. That the letters were mentioned and identified in the deposition of the plaintiff and referred to as a part of the deposition, can make no difference. The letters were of-

fered separately, after identification by the witness U. M. Jones, and the court erred in excluding them.

Again the plaintiff offered to prove by the witness, John H. Cotteral that just a short time, possibly two or three days prior to the date of the rendition of the judgment in the district court of Logan county, setting aside the tax deeds held by M. Yates, that he had a conversation with A. G. Jones in which the witness as attorney for the plaintiff, warned Jones that the title and ownership of the land in controversy was in the plaintiff, and that plaintiff's attorney and Jones then agreed that nothing was to be done in that suit without the consent of Cotteral. Upon objection by the defendants, the court also excluded this testimony, for the same reason that it was a conversation with a deceased person. For the reasons before stated, this ruling of the court was erroneous.

It is argued by counsel for defendants in error that even if the court erred in excluding the testimony complained of, that the error was immaterial, "for the reason that no notice of any fraud was proved to have been given to the defendants or either of them." The record discloses that M. Yates was the mother of Joe M. Yates and that Joe M. Yates was the husband of the defendant Annie Yates, and that Joe Yates wrote the following letters:

"Guthrie, Okla., Oct. 17, 1902.
"Jas. Conklin or his heirs,

"I have had charge of a piece of land owned by a Mr. Jas. Conklin. This land lies 5 1-2 miles east of Guthrie. This land sold several years ago for taxes and I hold the tax deed and am in possession of the place and will pay a good price for a good deed to this place. The nos. of the land is s. e. 1-4

Conklin v. Yates *et al.*

sec. 9, township 16, range 1 west. Now if you can give me a good lawful deed please write me at once what you will take for same. Also write me if a man in Guthrie by the name of A. G. Jones has a deed of any kind from you people. Jones has commenced suit in district court here for possession of this land, and I am inclined to think he has no authority for doing so. Please write at once in full about the place. I know I can afford to pay more for the land than Mr. Jones can and would like to hear from you at once.

"Yours very truly,

"Joe M. Yates."

"Guthrie, O. T., Oct. 17, '02.

"Geo. E. King, Esq.,

"Dear Sir:--

"I am informed that you are a brother in law to Mr. James Conklin that at one time lived here and afterwards moved to New York. I am the man who holds a tax title to the 160 acres of land that Jas. Conklin proved up on as a homestead and would be glad to learn the whereabouts of Mr. Conklin or his heirs Can you give me any information of them? I am willing to pay a good round price for a good deed from the right party or parties for this land. There is a man by the name of A. G. Jones in Guthrie who claims to represent the owners of the Conklin place and is going into court about it next month, so if you can give me any information, please do so at once, and if I can get the names and post office address of the right and lawful heirs I will pay a good price for their deed to the land. I do not think Mr. Jones has any legal authority to represent any body, but perhaps you can tell me.

"An early reply will greatly oblige,

"Yours very truly,

"Joe M. Yates."

The signature to the letters is identified by the witness Goodrich as the signature of Joe M. Yates, and the witness

Goodrich testified that shortly prior to the rendition of the judgment by which the tax deeds of M. Yates were cancelled that he had received letters from the plaintiff, in which were stated the facts with reference to the quit claim deed by the plaintiff to A. G. Jones, and the purpose for which the deed was made, and that Jones had no authority to sell it.   In October or November, 1902, just prior to the date of the judgment cancelling the deeds of M. Yates, he had several conversations with Joe M. Yates, in which conversations he showed him the letters that he had received from the plaintiff with reference to the quit claim deed to Jones, and in which it was stated that the deed was only made for the purpose of clearing the title from the tax deeds, and warning him that if he attempted to buy the land from A. G. Jones, he would get into trouble.   The witness Goodrich further testified as follows:

"Witness:   Mrs. Annie Yates never told me Joe was her agent until long afterwards.

"Q.   Did you have a talk with her?

"A.   Yes sir.

"Q.   When was that?

"A.   That was about the time this Mr. Yates left her.

"Q.   He left the country, has he?

"A.   Yes sir.

"Q.   Can you give any idea of that date?

"A.   This was some time last fall.

"Q.   1903?

"A.   Yes sir.

"Q.   What conversation did you have with Annie Yates on the subject

"A.   Why, she came up to see me, and we were talking about this property here, and she said she was in hopes when Joe made the arrangements to get that property that they could save something out of it, and I don't know that she said

right then that Joe was her agent. I didn't ask her those technical questions.

"Q. She didn't make that specific statement according to your recollection of the conversation with her, she referred to it on the assumption that he had represented her in these negotiations; is that correct?

"A.   Yes sir.

"Cross examination.

"Q.   When was Mrs. Yates in your office?

"A.   Mrs. Yates has been in my office very often since some time last fall when Mr. Yates went away—she was there the day he skipped out.

"Q.   At what time did she tell you Joe Yates was acting as her agent?

"A.   She never used the word agent, I told you she said at the time Joe made the arrangements to get this place for her, they were in hopes that they could save something out of it.

"Q.   Did she use any language that you would imply agency at this particular time, that Nelson bought this farm here?

"A.   She said when Joe made the arrangements to get the place in her name—

"Q.   Which place did she refer to?

"A.   The Conklin place, Mr. Jones.

"Q.   Did you ask her which place she referred to?

"A.   Yes sir, you know as much about this as I do.* * *""

As to the notice of fraud by Annie M. Yates, we have the fact of the relations of the parties; the fact that Joe M. Yates had written letters to the plaintiff in which he expressed a desire to purchase the land; the conversation of Joe Yates with the witness Goodrich, wherein he admitted having received a letter from the plaintiff, and wherein he was shown letters from the plaintiff to the witness, in which the facts

with reference to the title of A. G. Jones were stated, and that Jones had no authority to sell the land, and the subsequent admission of the defendant, Annie Yates, that her husband made arrangements to get the land for her; and that they were in hopes they could save something out of it; the fact that the consideration expressed in the deed from plaintiff to Jones was one dollar; that the information conveyed by the witness Goodrich to Joe Yates was while the suit was pending in the district court to annul the tax deeds held by the mother of Joe Yates; that the consideration as expressed in the deed from A. G. Jones to the defendant Annie Yates was one hundred dollars, and that on the same day she received the deed from Jones she made a loan of five hundred dollars on the land; that the loan was negotiated by Jones. In view of all these facts, we are of the opinion that the evidence of notice to the defendant, Annie Yates, was at least sufficient to withstand the demurrer.   Therefore, taking into consideration the evidence admitted and that which we have held was improperly excluded by the court, to wit, that A. G. Jones wrote a letter to the plaintiff, who was the owner of the land, soliciting his business and stating that he was often able to benefit owners by payment of taxes; that owners were often imposed upon by excessive taxes, and wrote a second letter offering to give references, and saying that with a quit claim deed, settlement could be made with the party holding the tax deeds, that afterwards plaintiff sent to Jones a quit claim deed for the land, the consideration named being one dollar; later, and about one year after the quit claim deed was executed by the plaintiff, Jones wrote to him that he could get him fifty dollars in full settlement of all demands and claims for the land, and sent a receipt to be signed by plaintiff in full for the

land; that just about the date on which the judgment was obtained annulling the tax deeds, that counsel for plaintiff informed Jones of the plaintiff's claims, and it was then agreed that no further steps should be taken except by and with the consent of counsel for plaintiff; that immediately Jones obtained judgment in his own name, and conveyed it to the defendant Annie Yates for the consideration of one hundred dollars, and secured a loan for her in the sum of five hundred dollars,—taking all this into consideration, we think the evidence sufficient at least to show that the deed made by plaintiff to Jones was for the purpose only of aiding to clear the title to the land from the tax deeds of M. Yates. Upon a demurrer to the evidence the court must consider as true every portion of the evidence tending to prove the case of the party resisting the demurrer. *Bequilland v. Bartlett,* 19 Kansas, 382; *Brown, Adm'r v. A. T. & S. F. Rd. Co.,* 31 Kans. 1; *Wolf v. Washer,* 32 Kans. 533.

In order to sustain a demurrer to the evidence the court must be able to say as a matter of law that the party introducing the evidence has not proved his cause.

In view of the conclusions here reached, the court erred in sustaining the demurrer of the defendant, Annie M. Yates.

There was no evidence which would justify the court in finding that the defendants Williams and Swinford had any notice of the transactions between the plaintiff and A. G. Jones, or that they had any notice of the alleged fraud.

The judgment of the district court of Logan county is affirmed as to the defendants Williams and Swinford, and reversed as to the defendant Annie M. Yates, with directions to grant a new trial as to the defendant, Annie M. Yates, to

overrule the demurrer to the evidence as to her, and to proceed in accordance with this opinion, the costs in this court to be equally divided between plaintiff and defendant Annie M. Yates.

Irwin, J., who presided in the court below, not sitting; all the other Justices concurring.