### DELOR *v.* DELOR.

1. DIVORCE—EXTREME CRUELTY.
   Calling his wife vile names, accusing her of theft and of infidelity constitute extreme cruelty on the part of the husband.

2. SAME—PRACTICE.
   Testimony received and considered in a suit for divorce taken upon a reference to a commissioner by the court of its own motion, works no prejudice to an appellant where the point which it tends to sustain is decided by the court in appellant's favor.

3. SAME—ALIMONY—ESTATES BY THE ENTIRETIES.
   The interest of a wife in an estate by the entireties cannot be diminished by a decree for divorce.

4. SAME—AMOUNT OF ALIMONY.
   An allowance to the wife of $3,800 in lieu of her interest in certain real property held by the entireties and valued at $7,000 is not excessive.

Appeal from Wayne; Donovan, J. Submitted December 15, 1909. (Docket No. 154.) Decided February 3, 1910.

Bill by Barbara Delor against Joseph Delor for a divorce. From a decree for complainant, defendant appeals. Affirmed.

*Thomas Hislop*, for complainant.

*Charles S. Hampton*, for defendant.

MOORE, J. The complainant filed her bill of complaint, alleging cruelty and asking a legal separation, which bill was amended by consent so as to ask for an absolute divorce. The defendant filed an answer in the nature of a cross-bill asking for a divorce. Complainant filed a replication, also answered to the cross-bill. A decree was

granted complainant for divorce and for alimony. The case is brought here by appeal.

The case did not take the usual course, but after it was partly heard in open court it was referred to a commis-sioner. A consideration of the questions raised by the solicitor for the appellant will be simplified by calling attention to some of the things which occurred upon the trial.

The trial progressed for a time, when the following occurred:

"*The Court:* I take it the contest is divorce, or no divorce, mainly?

"*Mr. Hampton:* Principally, I presume, the matter of property. The bill of the complainant is for separate maintenance, but the defendant files a bill in the nature of a cross-bill asking for divorce. The complainant asks for separate maintenance, and the defendant asks for a divorce. The principal matter of contest will be the property."

After a number of witnesses had been sworn, a colloquy occurred between court and counsel, in which the court suggested a limitation of the number of witnesses. Counsel said:

"*Mr. Hampton:* I readily appreciate what the court suggests and think it is better to adopt it, for my client will take the stand and swear he will not live with this woman any longer. I will say, second, if this accusation that this woman has made in her pleadings and in testimony so far as she was permitted to—if that accusation is true—the woman should have her decree, or anything she asks for, and it is simply a question of the division of the property. If that accusation is not true, no white man would live with the woman who would so charge, and the man should have the decree. I am willing to brush aside all the other matters, and come directly to that one, and I think the court is right in suggesting a limitation to this."

Later the question of amendment to complainant's bill arose when the following occurred:

"(After a brief recess.)

"*The Court:* You may amend your bill.

"*Mr. Hislop* (to Mr. Hampton): As I understand it, you consent to that amendment?

"*Mr. Hampton:* It is asked that the prayer of the bill be so amended as to ask for a divorce, instead of separate maintenance, and I have no objection to that."

After the question of whether defendant was afflicted with the disease referred to in her bill of complaint was raised, and some testimony given in relation thereto, a colloquy arose as follows:

"*The Court:* I am not judging the case upon that ground at all. If you are determined to go on with it that way, it will take probably more than the day.

"*Mr. Hampton:* The time of this court cannot be better used than in clearing a man's character.

"*The Court:* You may take all the time you want to. I will refer this case to Commissioner Samuel May for the balance of the hearing upon this testimony. I deem the case one that should not be heard in a public court room.

"*Mr. Hampton:* Shall we take testimony upon this one charge?

"*The Court:* That is all I care for.

"*Mr. Hislop:* Your honor has imposed a burden upon the complainant, which she is absolutely unable to bear. She cannot bring in that testimony and present it to this court.

"*The Court:* She does not need to bring in the testimony except upon that one charge.

"*Mr. Hislop:* I have not the money, and she has not the money.

"*The Court:* There are only two doctors; how many physicians have you?

"*Mr. Hislop:* I guess a couple.

"*The Court:* You have two. It is referred to Mr. May. I wish you would go down and make your arrangements as to time with him.

"*Mr. Hislop:* Will your honor make an order for an allowance to be made for the production of the testimony?

"*The Court:* Yes, upon that one point, I wish you would go down and make your terms with him.

"*Mr. Hislop:* We do not know where we are.

"*The Court:* It is confined to doctors.

"*Mr. Hislop:* I never could be confined to that; all the hearing that this case will ever have must be now.

"*The Court:* All the hearing that this case will ever have before me is referred.

"*Mr. Hislop:* So that we cannot put in our case.

"*Mr. Hampton:* We do not want to go before the commissioner, and pay for all of these witnesses. When I state upon that one point I will rest my case, I think you ought to adhere to the ruling made.

"*The Court:* I shall keep my word."

Testimony was taken before the commissioner. The complainant took testimony before the commissioner other than the testimony of the two doctors. When the testimony was presented to the trial judge, objection was made to his considering any of it.

It is evident, from a reading of the record, that defendant was seeking two things: *First,* to avoid having the charge established as set out in the complainant's bill of complaint that he had a venereal disease; and, *second,* to keep the amount of alimony as low as possible. The decree was to the effect that the acts of cruelty charged in the bill of complaint were true, except the allegation that defendant had a venereal disease. If all that occurred before the commissioner was eliminated by the trial judge, there was abundance of proof of extreme cruelty on the part of defendant to sustain the decree. It was shown that defendant had called complainant many vile names. He accused her of being a thief, and had charged her with infidelity to her marriage vows. It is apparent that, if the trial judge considered the testimony at all which was taken before the commissioner, it did not harm the appellant, for the reason that the judge found that complainant did not establish the charge to which appellant objected, and to meet which charge the testimony of the doctors was taken. It is also clear from the record that no injustice has been done defendant in sustaining the charge of extreme cruelty other than the one of having a venereal disease.

This brings us to the question of alimony. The decree gave to complainant as alimony the household furniture, $110 as costs, and $3,800, and required complainant to re-

lease her interest in the real estate. It also gave the complainant the option to take over the real estate upon the payment of $3,000. This option she declined to exercise. The real estate is owned by the parties by the entireties. It is appellant's claim that the allowance of alimony is too large, that there should be deducted from the value of the real estate the sum of $1,500 contributed towards its purchase of property which came to the appellant from the Delor estate. There are two answers to this contention: *First*, it is not made clear from what sources the money came which was the consideration for the real estate; and, *second* and conclusively, that the real estate is owned by the entireties, and it is not competent for the court in fixing alimony to diminish the estate owned by the wife in the realty in this proceeding. See *Brown* v. *Brown*, 144 Mich. 654 (108 N. W. 288). There is no serious controversy about the real estate being worth $7,000, making the interest of the complainant therein $3,500. The appellant is allowed to keep his grocery stock. The allowance of $300 alimony in excess of the value of complainant's interest in the real estate is not an excessive allowance in a proceeding of this kind.

The decree is affirmed, with costs.

MONTGOMERY, C. J., and OSTRANDER, HOOKER, and McALVAY, JJ., concurred.