# LYON v. LYON.

No. 2832.   Opinion Filed August 6, 1913.

(134 Pac. 650.)

1. **TRIAL—Demurrer to Evidence—Trial to Court.**  A demurrer to evidence is not expressly authorized by section 4165, St. Okla. 1893 (section 5002, Rev. Laws 1910), in cases tried to the court without a jury, and in such cases the court in the exercise of sound discretion may decline to pass upon such demurrer; but, if such demurrer is passed upon and sustained or overruled, such action by the court must be tested by the same rules that obtain in jury cases, unless, in the event the demurrer is sustained, it affirmatively appears that the court afterwards weighed all the evidence as upon final submission, and so gave judgment upon the evidence.

2. **SAME—Effect.**  A demurrer to evidence not only admits all facts the evidence tends to prove and every reasonable deduction therefrom in favor of the demurree, but it withdraws and requires the court to ignore unfavorable evidence adduced by the demurrant; and, if the evidence is sufficient to sustain a judgment for the demurree, the demurrer should be overruled.

3. **SAME—Divorce.**  A demurrer to the evidence, in an action for divorce, withdraws and requires the court to ignore a proposition of reconciliation made by the demurrant during the progress of the trial.

4. **DIVORCE—Grounds—Interest of State.**  Public policy favors marriage and the continuity of the marriage relation; the state is a deeply interested silent third party in every action for divorce, and the court, notwithstanding proof of statutory grounds upon which divorce may be granted, may, in the exercise of sound discretion, deny a prayer for divorce where the petitioner, under all the facts and circumstances, appears to be not free from blame for the cause upon which the prayer is predicated.

5. **SAME—Discretion of Court.**  A spouse, sensibly alive to duty in respect to the marriage relation and to the value of the confidence and esteem of the other spouse, will never persist in an avoidable course of conduct which he or she knows or suspects may excite or keep alive in the other spouse jealous suspicion of infidelity and unchastity, and, to the contrary, such spouse will and should do his or her utmost to remove all cause for such suspicion; and a prayer for divorce on the ground of such suspicion and false accusations based thereon may, in the sound discretion of the court, be denied a spouse who does less.

6. **SAME.**  It is within the sound discretion of the trial court to deny a petition for divorce, notwithstanding proof of extreme cruelty in repeated false accusations of infidelity and unchastity, where the evidence tends to show that the falsely accused spouse

is not without blame for the original excitation or subsequent perpetuation or increase of the suspicions of the accusing spouse which culminates in such accusation.

7.   **TRIAL—Motion for Nonsuit.** A motion for a nonsuit is a proper practice, and available in cases' tried to the court without a jury; but such motion, in effect, is but a demurrer to the evidence.

8.   **DIVORCE—Grounds—Extreme Cruelty.** The doctrine is now established that, without physical violence, acts or conduct which, operating upon the mind, and, through the mind, upon the physical system, produce bodily hurt or a reasonable apprehension thereof may constitute extreme cruelty, and therefore cause for divorce; but the ascertainment of the effect, and not the character, of such acts and conduct is the ultimate purpose of inquiry.

9.   **SAME—Demurrer to Evidence.** Where the evidence, upon demurrer thereto, shows that, without cause, the husband, on a number of occasions falsely accused his wife of improper relations with other men, and of infidelity and unchastity, and on two such occasions committed a light assault and battery upon her, and where such acts and conduct, operating upon the mind, and through the mind, upon the physical system, produces bodily hurt, or where such effect might reasonably be apprehended as the result of such acts and conduct, it was error to sustain a demurrer to the evidence.

10.   **SAME — Exclusion of Evidence — Rebuttal.** Where a husband charges improper conduct, including infidelity and unchastity, against his wife, during a certain period of time and while she is at a certain place, and where such accusations, together with other prior ones of a similar character, constitute the principal ground upon which she seeks a divorce, it is error for the court to exclude the competent testimony of her aunt, who was with her during all said period of time at said place, to the effect that she was not guilty of such conduct, and that her conduct was that of a chaste, modest, and faithful wife and mother.

(Syllabus by Thacker, C.)

*Error from Superior Court, Oklahoma County;*
*E. D. Oldfield, Judge.*

Action by Elizabeth B. Lyon against J. L. Lyon. Judgment for defendant, and plaintiff brings error. Reversed.

*Fred S. Caldwell* and *Shartel, Keaton & Wells,* for plaintiff in error.

*Giddings & Giddings* and *Warren K. Snyder,* for defendant in error.

Opinion by THACKER, C. The plaintiff's petition for divorce alleges, and her evidence, with the inferences which might

reasonably be drawn from the same in her favor, tends to prove defendant guilty of extreme cruelty in that, without reasonable or justifiable cause, he abused her by using to and concerning her profane, vile, and opprobrious language, and guilty of gross neglect of duty in that, although able to do so, he refused to provide for her and their infant son, born in February, 1909, and has been in abandonment of her and their son since about September 6, or 7, 1910, notwithstanding he probably knew when he left her and their home that she was soon to give birth to another child by him. Admitting the evidence to be true in every particular, and drawing from it the reasonable inferences in her favor of which the same is susceptible, it appears that within two weeks after their marriage on December 7, 1904, he, upon being importuned as to the cause of his state of mental agitation, which she discovered when he entered their room at a hotel, admitted, in reluctant explanation, that he had thought there was another man in the room with her when she, being asleep or in the bathroom, failed to respond promptly to his demand for admittance when he arrived at the locked door of the room; but the evidence discloses no other instance of his suspicion against her marital fidelity, or of any jealousy on his part, until about the summer of 1908, when a man named Moore occupied, in their home in Oklahoma City, one of the three upstairs rooms in which she kept lodgers; that during that summer of 1908, upon his discovery of diminution or total exhaustion of their supply of suppositories, used to prevent conception, he accused her, with much abuse, of having used them in sexual intercourse with said Moore, and persisted in such accusation notwithstanding she had only loaned them to the wife of another one of her roomers, and not only so informed him, but offered to and was only prevented by him from calling the woman to whom she had loaned them to corroborate her statement; that after this incident, and during the remaining few months of Moore's stay at their home, defendant manifested intense jealousy and suspicion involving her in improper and adulterous relations with said Moore, notwithstanding she was and ever has been a chaste woman and loyal wife; that after

Moore left and a man named Hall took lodging in his place in their home, this second lodger, in order of succession, became the object of defendant's groundless jealousy, and she was frequently the innocent victim of violent verbal assaults made by defendant in "fits" of jealous rage; that, in connection with his accusation against her of improper relations with said Hall, defendant cursed and abused her, and one one occasion told her to go upstairs and sleep with Hall; that on two separate occasions he committed a light assault and battery upon plaintiff and once threatened to choke her; that in the summer of 1910 she, and their said infant son, spent about two months in Colorado for the benefit of their health, her aunt, Mrs. Mary Strayhorn, occupying the same room at the hotel, and being constantly with her during all the time of her stay there; that during her absence in Colorado defendant came into possession of a letter with a deed to real estate inclosed, which came through the mail to Oklahoma City, and was intended for some other person of her name, but, without inquiry of plaintiff, defendant assumed that the letter or deed, or both, were intended for plaintiff, and had come from some man or men with whom she sustained improper relations, and upon this assumption he wrote her a very offensive and accusatory letter; that about September 6, or 7, 1910, immediately after her return home from Colorado, some one giving his name as Bailey or Barley, at Springfield, Mo., was given phone connection with their residence number, whereupon defendant, who first answered the call, caused plaintiff to go to the phone, although plaintiff did not know the party calling from Springfield, nor talk to him further than to discover the call was not intended for her; that defendant, without reason therefor, became enraged against plaintiff, and charged that the man calling from Springfield was Moore; that plaintiff had been with him in adulterous relations at defendant's expense during her stay in Colorado; that, under the assumed name of Bailey or Barley, Moore had attempted to talk with plaintiff by phone from Springfield at the time already stated, and, with cursing and abuse of plaintiff, abandoned her and their child and home; and that since so abandoning her

he had not properly provided for the support of herself or child, but he frequently called her up on the phone and abused her; once at least when another lady was standing near enough to the phone to hear some of the conversation.

The answer, besides denial of extreme cruelty and gross neglect of duty, contains a cross-petition for divorce, in which defendant alleges against plaintiff extreme cruelty, in that she cursed him and used abusive language and vile and opprobrious epithets to him, and gross neglect of duty, in that, without his consent and in one or more instances or respects, notwithstanding his express objection, she went away from home, went buggy riding with other men, received suggestive post cards from and was guilty of improper conduct with said Moore, also that said phone call was from said Moore, and she refused to make satisfactory explanation of same, which immediately caused his leaving her and their home. The answer further alleges that she is an unfit person to have the care and custody of their child.

Upon the trial counsel for defendant, before concluding his first cross-examination of plaintiff, asked if she would accept a proposition of reconciliation and, after being answered that she would not, pursued this cross-examination to its conclusion without making such proposition; but, during a subsequent cross-examination, when plaintiff was again and finally upon the witness stand, he formally proposed a reconciliation, suggested a dismissal of the cross-petition, and asked plaintiff if she would accept it, to which she responded that she could and would not. After plaintiff had rested, defendant demurred to the evidence as insufficient in respect to each ground alleged for divorce in plaintiff's petition, and especially in that there is a material variance between the allegations of the petition and the evidence, and in that the offer of reconciliation made by defendant and rejected by plaintiff is a bar to the granting of her prayer for divorce. After argument the court announced that the demurrer would be sustained, and that judgment would be for defendant for costs; but, except an order overruling a motion for a new trial, no further order, judgment, or decree was given or entered in the case.

We are confronted at the threshold of a review of this case by the question as to whether the correctness of the decision of the court in sustaining the demurrer must be tested by the rule that such a demurrer admits all the facts the evidence tends to prove, including every reasonable and fair inference deducible therefrom in favor of the plaintiff, and withdraws or waives all unfavorable evidence and inferences, or whether such decision may be tested by the rule involving the assumption that the trial court weighed the evidence, and, after thus ascertaining the facts actually proved, found the same insufficient to entitle plaintiff to a divorce, and therefore sustained the demurrer upon the theory that, in a case tried to the court without a jury, it may be treated as in effect merely a conditional submission of the case to the court upon the evidence.

In the case of *Porter v. Wilson et al., post,* it is shown that section 4165, St. Okla. 1893 (section 5002, Rev. Laws 1910), in which is found the only statutory warrant for demurring to the evidence of the adverse party, expressly relates only to jury trials, although the same statute, in Kansas (section 4370), has been uniformly held to authorize by its spirit, if not its letter, demurrer to evidence in cases tried to the court without a jury; but this case further shows that demurrers to the evidence in cases tried to the court without a jury is an anomalous practice, and that where the court, after sustaining a demurrer, weighs the evidence and renders judgment in favor of the party who demurred, the judgment will be sustained if the court, upon weighing such evidence free from the admission of the demurrer, might have rendered such judgment; and it should be borne in mind that in that case it affirmatively appears from the record that the court did weigh the evidence, and found the same insufficient on the gist of the action.

On a motion for dismissal or nonsuit, which are always available, the probative effect of the evidence is neither ascertained nor considered, nor a summary determination of the merits of the case had in any similar attack upon an adversary's evidence (Thompson on Trials, secs. 1667, 2267, 2268; 14 Cyc. 431; Wigmore on Evidence, sec. 2495; *First National Bank v.*

*Northwestern National Bank,* 152 Ill. 296, 38 N. E. 739, 26 L. R. A. 289, 43 Am. St. Rep. 247; *Crerar v. Daniels,* 209 Ill. 296, 70 N. E. 569; *Hahn v. Hull* [Md.] 4 Atl. 407) ; and we know of no practice permitting a party, as a matter of right, to inquire into and test the probative effect of his adversary's evidence upon the mind of the judge before final submission of the case, although, in a few cases, a motion for a nonsuit has been treated as a submission of the case on its merits. A motion for a non-suit is in effect a demurrer to the evidence. *Brown v. O. L. Co.,* 24 Ore. 315, 33 Pac. 557; *Vanbebber v. Plunkett,* 26 Ore. 562, 38 Pac. 707, 27 L. R. A. 811; *L. N. R. Co. v. Copas,* 95 Ky. 460, 26 S. W. 179; *State v. Eubank,* 33 Wash. 293, 74 Pac. 378.

It may be argued that a sustention of a demurrer to the evidence in a case tried to the court without a jury necessarily includes a finding that, when considered in any aspect less favorable to the demurree, the evidence would be deemed insufficient; and certainly the judge would, at the same time, hold the evidence insufficient if the case was finally submitted to him, while the difficulty of distinguishing between the insufficiency of the evidence upon the admissions of the demurrer and its sufficiency when weighed and subjected to those proper and necessary refining processes of mental action that follows a final submission of a case should not, without good reason, be imposed upon him; but, even if the judge might not, in the exercise of sound discretion, decline to pass upon a demurrer in such cases, especially when it is not clear that the evidence is insufficient after allowing all the admissions involved therein, the difficulty of his task would not seem to justify a rule that would permit a demurrant to discover the probative effect of his adversary's evidence without waiving his own right to adduce evidence in refutation or avoidance. We see no good reason, however, why the trial judge may not and should not, in cases tried to him without a jury, decline to pass upon a demurrer unless it is clear that, after allowing such admissions, the evidence is insufficient.

If a judgment sustaining a demurrer may be tested by a rule giving it the effect of a final submission of the case to the

jury, as against the demurree, and without involving any admissions in favor of the demurree, it may occur that on review in this court the same could and would be sustained upon the view that upon weighing the evidence its probative effect might have been found insufficient, while in fact, the demurrer was sustained because of total want of evidence tending to prove some fact, aside from the gist of the case, erroneously or otherwise deemed by the trial court to be essential; and it appears that the opportunity for such mishaps should not, without good reason, be allowed to occur at so early a stage of the trial, and before demurrant is ready to take the risk of a final and unconditional submission of the case, although the same may unavoidably occur upon the final submission.

In any event, the correctness of an order or judgment sustaining a demurrer to the evidence in cases tried to the court without a jury should be tested by the rule that the demurrer admits all the facts the evidence tends to prove, and every reasonable inference deducible therefrom in favor of the demurree, and also operates as a withdrawal of any evidence in favor of the demurrant, unless it affirmatively appears from the record that the judge did in fact weigh the evidence as upon final submission, and base his judgment for the demurrant upon lack of probative effect, or absence of evidence, upon the gist of the demurree's contention.

The correctness of the decision in sustaining the demurrer in this case must be tested by the rule that the demurrer admits the facts the evidence tends to prove, including every reasonable and fair inference deducible therefrom, in favor of the plaintiff. *Conklin v. Yates,* 16 Okla. 266, 83 Pac. 910; *Ziska v. Ziska et al.,* 20 Okla. 634, 95 Pac. 254, 23 L. R. A. (N. S.) 1; *Shawnee Light & Power Co. v. Sears,* 21 Okla. 13, 95 Pac. 449. Applying this test in the present case, it appears that plaintiff was entitled to a divorce upon the evidence as it stood at the time of the demurrer, considered in connection with the fact of the grave, and, on demurrer, presumptively false, charges embodied in the answer wrongfully made and persisted in; and the demurrer should have been overruled. See *Adams v. Adams,*

30 Okla. 327, 120 Pac. 566; *Martin v. Martin,* 150 Iowa, 223, 129 N. W. 816; *Mosher v. Mosher,* 16 N. D. 269, 113 N. W. 99, 12 L. R. A. (N. S.) 820, 125 Am. St. Rep. 654; *Delor v. Delor,* 159 Mich. 624, 124 N. W. 544; *Miller v. Miller,* 89 Neb. 239, 131 N. W. 203, 34 L. R. A. (N. S.) 360; *Mills v. Mills,* 88 Neb. 596, 130 N. W. 419; *Ellison v. Ellison,* 65 Neb. 412, 91 N. W. 403; *Rivers v. Rivers* (Tex. Civ. App.) 133 S. W. 524; *Aycock v. Aycock* (Tex. Civ. App.) 131 S. W. 1139; *Rose v. Rose,* 129 Mo. App. 175, 107 S. W. 1089; *Goff v. Goff,* 60 W. Va. 9, 53 S. E. 769, 9 Ann. Cas. 1083; *Morris v. Morris,* 57 Wash. 465, 107 Pac. 186; *Markowski v. Markowski,* 44 Wash. 594, 87 Pac. 914; *Mathewson v. Mathewson,* 81 N. J. Law, 173, 69 Atl. 646, 18 L. R. A. (N. S.) 300.

In *Beach v. Beach,* 4 Okla. 359, 46 Pac. 514, it is held:

"The doctrine is now established that, without physical violence, acts or conduct which, operating upon the mind, and, through the mind, upon the physical system, produce bodily hurt may constitute cause for divorce. With reference to acts of physical violence, the rule has always been that a reasonable apprehension of bodily hurt was sufficient; but, where the conduct complained of operates primarily upon the mind, producing mental pain, it is not sufficient that there should be simply danger that such conduct, thus operating through the mental faculties, may produce injury to the physical system or bodily hurt; but it must be shown that such in fact is the effect, or, at least, that such effect may be reasonably apprehended as the result of the conduct."

A court will look to the effect that actually has resulted, or that may be reasonably apprehended, rather than to the character of such acts and conduct, in deference to the view that while they might constitute very extreme cruelty in one case, they might constitute much less in another.

The evidence tending to show that such in fact was "the effect, or, at least that such effect may reasonably have been apprehended as the result of the conduct," will appear from the following quotations from the record:

"Q. What effect on you, on your feelings and on your health, that these various accusations that you have mentioned and testified about, by your husband, have if any? A. I know

the effect it had. I stood it as long as I possibly could. One reason why I insisted on immediate trial. I put up with it as long as I possibly could. Q. I asked what effect it had on your feelings and health? A. Every time he called up on the phone it made me nervous, and made me so nervous I broke half the dishes in the house, and it upset me every way. Q. Well, before that, briefly? A. The morning I left home and went up to Doctor Andrews' office with the baby she said, 'Mrs. Lyons, what is the matter?'— Q. Just what the effect has been on you? A. I was in a critical condition and am now. I will have to have an operation after the child is born, so Dr. Taylor told me. Q. What effect did it have on you, the fact that he accused you of having lived with somebody in Colorado, and the accusation he made when he left? A. I don't think any woman can describe the effect it would have, the humiliation it would cause a woman to have a man make such accusations as that against her character. I don't think any woman could describe it."

Although this evidence may be considered weak upon this precise point, we do not believe that it can be said that, considered in connection with the character of the accusations and attacks made upon plaintiff and the fact of her innocence, it does not tend to show that defendant's conduct, operating upon her mind, and, through her mind, upon her physical system, did not produce bodily hurt, and that such effect might not reasonably have been apprehended as the result of such conduct. It may be that the trial judge weighed the evidence and ascertained the truth in the case as if there had been no demurrer; but we feel bound to assume that he treated the demurrer as an admission of all the facts the evidence tends to prove, and every reasonable inference deducible therefrom in favor of plaintiff, and upon this assumption we are unable to escape the conclusion that there was error in sustaining the demurrer.

However, if it be conceded that the trial judge did in fact weigh the evidence, and find the same insufficient in probative effect, it appears that he erred in the exclusion of the evidence, by deposition, of Mrs. Mary Strayhorn in corroboration of plaintiff's testimony that Moore was not in Colorado, and that her conduct while there was that of a chaste and modest woman and faithful wife and mother, certainly if it be conceded that upon

weighing the evidence the trial judge did not give full faith and credit to her testimony in this respect.

It may be conceded that, as a general rule, an honest and conscientious spouse, chaste in practice and in fixed mental attitude as well, will rarely find a lack of confidence in the other spouse, certainly not if the other spouse is a normal person of good character and not less than ordinary intelligence; and it must be conceded, as urged by counsel for defendant, that even an innocent wife, upon discovering jealousy and suspicion in her husband, should change her course of conduct, so far as reasonably possible, to meet his views of propriety, and thus restore his confidence and avoid recurrence of his jealousy or suspicion, and that a husband would be subject to the same rule; but if the court in position to judge, with lights before him that we cannot have, took such view of the case, it would seem only fair to plaintiff that he should have heard the evidence of disinterested persons that she offered, in corroboration of her own, to show what her conduct was, especially while she was in Colorado.

It may be argued that in support of the judgment or order it should be presumed that the court gave full faith and credit to her testimony in every respect in which it could have been strengthened by the evidence excluded; but that evidence tends in some degree to prove more than the falsity of the accusation of her husband in respect to her stay in Colorado—it tends to show a character of woman who would suffer severely from such accusation, and would most likely not only be free from guilt of the accusation against her, but would make every reasonable effort to avoid doing or saying anything that would excite jealousy or suspicion in her husband—and we are unable to perceive any theory on which the court could have denied her petition for divorce upon which the excluded evidence would not have been in some degree material.

The state is a deeply interested silent third party in every action for divorce, protesting, in the name of public policy favoring the marriage relation and moral wholesomeness of same, that in addition to statutory grounds the petitioner must be free from serious blame, and the decree wholesome, so far as reasonably

may be, in effect upon the public morals and ideals and marriage relations generally (2 Bishop on Marriage, Divorce, and Separation, 480 and 489-498); and, although the presumption of innocence as between the parties strictly may be the same as in other cases (14 Cyc. 681), the court, representing the state and looking to the question of moral wholesomeness in effect of his decrees, may feel bound to look somewhat beyond these parties and their respective private rights and liabilities under technical rules of proof and procedure; and he may, in the interest of the state, exercise a sound discretion in his disposition of a case (14 Cyc. 577, 578), subject, however, to the rule that in no event can a divorce be granted unless a ground on which the statute (section 4544, St. Okla. 1893; section 4962, Rev. Laws 1910) permits it is found to exist. It follows that he may make somewhat independent investigations in the taking of evidence, may require the corroboration of a party's uncontradicted testimony (14 Cyc. 688, 689), may disregard admissions of the adverse party (14 Cyc. 690, 691 and 704), and may exercise reasonable discretion in refusing decrees (14 Cyc. 578 and 734-736); but, as already stated, in no case can he grant a divorce unless the statutory grounds upon which they may be granted exist. The converse of the proposition, that the court may require corroboration of plaintiff's own testimony, and exercise such discretion, would seem to require the court to permit such corroboration as against a judgment denying the prayer in a case like this.

We strongly suspect that, in the exercise of his discretion, the trial judge sustained the demurrer, intending to deny plaintiff's prayer for divorce in deference to his views of the case on its merits, involving the grounds defendant found for accusing her of improper conduct, especially while she was in Colorado; but, if so, it appears that he should have first received the evidence of Mrs. Strayhorn, which, if true, shows plaintiff's conduct to have been most exemplary while she was in Colorado, and tends to show that she would not likely have consciously given cause for her husband's suspicions, nor failed to do what she could to prevent the same.

Opinion of the Court.

In what has already been said we have assumed that the offer of reconciliation did not justify the order sustaining the demurrer to the evidence; but, aside from the question as to whether an offer of reconciliation could, in any event, have had any further effect in this case than to relieve the defendant of his attitude of being in abandonment of plaintiff (Bishop on Marriage, Divorce, and Separation, 1707), such offer must have been made in good faith, and without improper qualification (*Id.* 1708, and 14 Cyc. 619, 620); and it could hardly be urged that, on a demurrer to the evidence, his good faith could be presumed. A demurrer to the evidence not only admits the truth of the same, but withdraws and requires the court to ignore unfavorable evidence adduced by the defendant; and, if the evidence was sufficient to sustain a judgment for plaintiff, the demurrer should have been overruled. See the following cases: *Jaffray v. Wolf,* 4 Okla. 303, 47 Pac. 496; *Missouri Can Co. v. Ross,* 72 Kan. 669, 83 Pac. 616; *Stewart v. Lyons,* 54 W. Va. 665, 47 S. E. 442. This principle would seem necessarily to apply against a proposition of reconciliation, made during the taking of the evidence by the party so demurring; and the court certainly could not properly have considered the proposition of reconciliation in any aspect favorable to defendant upon his demurrer.

It follows from what has been said that this case should be reversed, defendant's demurrer to plaintiff's evidence should be overruled, and the judgment for costs against plaintiff set aside pending further proceedings in the case in the trial court.

By the Court: It is so ordered.