H. PERILSTEIN, INC., and State Insurance Fund, Petitioners,

v.

Bessie STEWART and the State Industrial Court of the State of Oklahoma, Respondents.

No. 42264.

Supreme Court of Oklahoma.

Jan. 23, 1968.

Sam Hill, Fred Nicholas, Oklahoma City, for petitioners.

K. D. Bailey, Okmulgee, Robert L. Shepherd, Palmer, Shepherd, Maner & Armstrong, Tulsa, Charles R. Nesbitt, Atty. Gen., for respondents.

WILLIAMS, Justice.

There is involved here an original proceeding to review an award of the State Industrial Court in favor of the respondent, claimant below, Bessie Stewart, for the use and benefit of herself as surviving widow and William Wayne Stewart, surviving dependent son, aged 15, for the death of her husband Thomas Stewart under the death provisions of the Oklahoma Workmen's Compensation Act, 85 O.S.1961, § 22(7).

Parties will be referred to as they appeared before the State Industrial Court. The deceased workman Thomas Stewart will be referred to as deceased.

Deceased on November 17, 1964, was employed by the respondent as a machinist. His ordinary work required him to lift pieces of glass weighing about twenty pounds each and turn them on a Webber (finishing) machine. Rarely, he was required to assist in the loading of cartons weighing about 60 pounds containing sheets of glass. He reported for work at about 3:30 P. M. on November 17, 1964, and started the operation of the Webber machine. He was then directed by the shop foreman to shut the machine down and assist with the loading of a truck.

A truck was backed up to the loading ramp. Deceased lifted five cartons containing glass and weighing about 60 pounds each on to a loading cart or dolly. The dolly was two wheeled with two handles at the top and an iron platform at the bottom. Evidence established that sometimes the cartons were "walked" on to the dolly without lifting but on other occasions were lifted and placed on the dolly horizontally. Deceased's helper testified that deceased lifted the cartons and placed them on the dolly horizontally.

After the dolly was loaded the deceased pushed the dolly across the loading ramp and a sheet iron plate was placed between the rear of the truck and the loading dock and into the truck. Deceased had to push the loaded dolly up a little incline which required "a little extra effort."

He made three of these loading trips. After pushing the dolly which was loaded with some 300 pounds of cargo, to the truck on the final trip, deceased began coughing and spitting up large quantities of blood. He was placed in a car and rushed to the hospital. The trip required about 15 minutes. He was pronounced dead in the emergency room upon his arrival.

The temperature inside the warehouse was about 75 to 80 degrees. The weather outside was rainy and the temperature was about 35 or 40 degrees.

Deceased was in good health at the time he sustained the seizure and no competent evidence was submitted establishing the existence of prior disease or disability.

Dr. B who examined the deceased upon his arrival at the hospital stated in his report that the death of the deceased was the result of excessive bleeding and hemorrhaging. He made no definite diagnosis as to the cause. No autopsy was performed.

Dr. M in response to a hypothetical question submitted by the claimant testified that the death of the deceased was caused by a ruptured artery in the hilus (fork) of the lung due to several factors including a possible congenital malformation of the pulmonary artery, a great amount of physical pressure exerted by the deceased in pushing the cart and the deceased being required to work in a heated room where the temperature was approximately 80 degrees and then move to an outside temperature of about 40 degrees resulting in increased blood pressure of the arteries. He testified that deceased, in his opinion, did not sustain a heart attack.

Dr. R in response to a hypothetical question submitted by the respondent testified:

"I have an opinion, but it is purely an opinion, and with the information at hand it is impossible to be sure of what he died. People who have bleeding from their lungs or gastrointestinal tract can easily go into shock, and they can bleed to death, but this is a matter that nearly always goes on over a period of hours or days and not for a period of a few minutes as was the case here. It is possible that he had an aneurysm of his aorta which ruptured into his trachea, and if this were the case, he could have died within a few minutes. The most likely cause, and again let me emphasize that this is merely an educated guess, is that he died of some type of heart failure. People can die of congestive heart failure, though usually not this rapidly, and cough up frothy bloody sputum. For that matter, people can die of coronary occlusion, and as one of the terminal events, some bloody sputum may be coughed up."

The State Industrial Court sitting en banc unanimously affirmed the award of the trial judge, the order reading in part as follows:

"That on November 17, 1964, Thomas Stewart was in the hazardous employment of respondent, and on said date sustained an accidental personal injury arising out of and in the course of his employment, consisting of a heart attack, from which he died on the same day."

 We have held in several cases that a disability is compensable if it is caused or precipitated by a strain or exertion occurring while the employee is doing his work in the usual and customary manner although nothing unusual occurs to cause the strain or exertion. Bill Gover Ford Co. v. Roniger, Okl., 426 P.2d 701; and see cases therein cited.

The facts presented in the present case are quite similar to those involved in Boardman Company v. Eddy, Okl., 363 P.2d 821, wherein the court said:

"* * * Whether decedent's death resulted from an accidental injury arising out of employment or from one induced by a spontaneous internal condition which alone precipitated his idiopathic fall and subsequent fatality formed the principal

issue in the proceeding. No single outstanding physical factor was disclosed or ascertained which necessarily precluded either conclusion. Although the actual cause of death cannot under the circumstances be entirely free from some speculation or uncertainty, the question was essentially one of fact. * * * Both parties elicited competent evidence in support of their divergent theories of causation. The trial tribunal resolved the disputed issue adversely to the employer. In such instance it is neither the duty nor the province of this court to interfere with the factual determination so made. * *"

■ In our opinion the effect of the testimony of respondent's Dr. R was that in his opinion the death of the deceased was caused by a heart attack and a rupture of some of the arteries of the heart. He stated that in his opinion the heart attack was not caused by the work the deceased was doing at the time he began spitting up blood. He admitted on cross-examination that violent activity could have caused a rupture of an artery of the lung. As we view this case the question of whether the hemorrhaging and the death of the deceased was the result of a rupture of the artery of the lung or a heart attack is immaterial. The undisputed facts remain that the deceased, while working for the respondent and undergoing a strain, sustained a sudden seizure (resulting in his vomiting large quantities of blood), which was the cause of his death in about 15 minutes. These facts in our judgment are sufficient to sustain the award of the State Industrial Court.

Respondent contends that the trial court erred in permitting Dr. M to answer a hypothetical question. At the time the question was propounded the attorney for the respondent objected on the ground that the question was incompetent, irrelevant and immaterial and for the further reason that the question included facts not in evidence and failed to include facts in evidence.

■■ Both counsel for the claimant and the trial court requested counsel for the respondent to point out any facts which should be included in the question or any facts which should be omitted. Counsel for the respondent replied "I don't think I have to point them out to the court at this time." The court said "You do have something in mind." The attorney replied "I do." The court said "You want to keep them secret." The attorney replied, "Yes, sir." Upon request of the court the attorney is required to be specific and state the grounds of his objection, otherwise the objection is insufficient. Tudor v. American Inv. Co. of Enid, 163 Okl. 274, 21 P.2d 1056; McNally v. Harley, 68 Okl. 115, 172 P. 46; Conklin v. Yates, 16 Okl. 266, 83 P. 910; Enid & Anadarko Ry. Co. v. Wiley et al., 14 Okl. 310, 78 P. 96.

■ We have examined the hypothetical question and compared it with the evidence submitted at the trial. The question was in proper form and in accord with the evidence. The court committed no error in overruling the objection of the respondent to the question. Kansas City Southern Ry. Co. v. Haynes, Okl., 320 P.2d 404, 411; Ada. Coca Cola Bottling Co. v. Asbury, 206 Okl. 269, 242 P.2d 417, 418, 420; Mead Bros. v. Watts, 135 Okl. 23, 273 P. 207; Chicago R. I. & G. R. Co. v. Bentley, 43 Okl. 469, 143 P. 179.

We find no merit in further argument of petitioner of effect that Dr. M based his opinion as to causation of deceased's death in part upon his own statement that the prevailing barometric pressure was probably relatively low at the time deceased had his onset (which pressure he stated would be low as shown by the fact it was misty and rainy at the time). The U. S. Weather Bureau Record introduced in evidence bore out his statement.

Award sustained.

All Justices concur.