## WADLEIGH v. PARKER *et ux.*

No. 1927.   Opinion Filed June 25, 1912.

(124 Pac. 957.)

1.   **WITNESSES—Competency—Transactions With Persons Since Deceased.** Under section 5841, Comp. Laws 1909, no party is allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the representative of such deceased person.

2.   **SAME.** In a suit on a note by the administrator of the deceased person, the defendant pleaded usury. A statement, part of which was in the handwriting of the deceased person, was offered in evidence, and the defendant was permitted to testify that this statement was given by the deceased person, and that the various items shown on the statement were intended to represent the usurious transaction, and that he paid a usurious rate of interest for the money. Held, that this testimony related to a "transaction" with the deceased person, and that it was error to admit it.

3.   **APPEAL AND ERROR—Disposition of Cause—Reversal—Admission of Incompetent Evidence.** When a case is tried to the court without the intervention of a jury, and incompetent evidence is admitted, which is necessary to a decision, the case should be reversed.

(Syllabus by Ames, C.)

Wadleigh v. Parker et ux.

*Error from District Court, Mayes County;*
*T. L. Brown, Judge.*

Action by G. A. Wadleigh, administrator of the estate of Geo. A. Wadleigh, against D. C. Parker and Nannie E. Parker, his wife. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*I. C. Duckworth* and *R. A. Mooneyham,* for plaintiff in error.

*J. H. Langley,* for defendants in error.

Opinion by AMES, C. This action was brought in the district court of Mayes county to recover a judgment on a note and a decree foreclosing a real estate mortgage, which was executed to secure the note. The only defense necessary to state is usury, and, as the note was an Indian Territory contract, the effect of usury was to forfeit the entire indebtedness. A jury was waived and the issues were tried to the court. The plaintiff offered in evidence the note and mortgage and his letters of administration, and on cross-examination of the plaintiff the defendant introduced in evidence a note for $400, payable to plaintiff's testator, executed by the defendant, which had been paid, and the statement of account, apparently in the handwriting of the testator, as follows:

Exhibit 2.
Mutual Life Insurance Co., New York.
Joplin, Mo., Oct. 27th, 1904.

D. C. Parker,
Fire, Tornado,      To Musselman, Agent, Dr.
Accident, Plate Glass,      General Insurance Agent,
Employer's Liability.      Room 2 Model Bldg.,    407 Main St.

| Date. | Company. | Property. | No. | Amt. | Premium. |
|---|---|---|---|---|---|
| 6 Months interest | | | | 48. | |
| Draft to pay for patent | | | | 56.25 | |
| Original Loan | | | | 400. | 504.25 |
| Loan | | | | | 800. |

295.75

The defendant thereupon offered his own testimony, to which objection was made on the ground that the defendant could not testify to a transaction with the deceased. The court overruled this objection, and the defendant then testified, in substance, with

reference to the Exhibit 2, which had been introduced on the cross-examination of the plaintiff, that the exhibit was a memorandum given him by the deceased in Joplin, Mo., showing the account between the parties, and the amount that would be due the defendant after deducting the $400 note and the interest and the draft specified in the exhibit; that the $48 item was interest on the $800 for six months at twelve per cent. per annum; that the item of $56.25 was for a note which the defendant had given the deceased and which he had subsequently paid; that the $295.75 item represented the balance due the defendant on the note after deducting the previous credits; that the rate of interest charged was twelve per cent. The court found that the contract was usurious and rendered judgment for the defendant.

The first error assigned is in the admission of the testimony of the defendant. Section 5841, Comp. Laws 1909, is as follows:

"No party shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where they have acquired title to the cause of action immediately from such deceased person; nor shall the assignor of a thing in action be allowed to testify in behalf of such party concerning any transaction or communication had personally by such assignor with a deceased person in any such case; nor shall such party or assignor be competent to testify to any transaction had personally by such party or assignor with a deceased partner or joint contractor in the absence of his surviving partner or joint contractor, when such surviving partner or joint contractor is an adverse party. If the testimony of a party to the action or proceeding has been taken, and he afterwards die, and the testimony so taken shall be used after his death, in behalf of executors, administrators, heirs at law, next of kin, assignee, surviving partner or joint contractor, the other party, or the assignor, shall be competent to testify as to any and all matters to which the testimony so taken relates."

It will be observed that under this section no party shall be allowed to testify in his own behalf in respect to any transaction

or communication had personally by such party with a deceased person, and, if the defendant's testimony related to a transaction had personally between the defendant and the deceased, it was incompetent.

It will be observed that the defendant testified that the memorandum was given him in Joplin, Mo., by the deceased, and that he testified fully as to the effect and meaning of the figures on the memorandum. It seems clear to us that this evidence was admitted in violation of the statute, as the whole purport of it was a personal transaction between the deceased and the defendant.

In *Nunnally v. Becker,* 52 Ark. 550, 13 S. W. 79, claim was made for money alleged to have been deposited with the deceased, and the living party was permitted to testify as follows:

"On the evening of that day, after business hours, as was my usual custom, I took the post-office funds on hand, amounting to $183, in a small wooden box in which I always kept the funds, and carried them to defendant's intestate to be locked up for safe-keeping during the night in his iron safe; and I was standing within a few feet of said intestate when I saw him place said box of funds in said iron safe. The box containing the funds was locked, and I kept the key. The safe was an old-fashioned one, and was locked by means of a key which said intestate always carried with him. There was no other key to the safe that I know of. After the funds were placed in the safe, I went home. The next morning before breakfast said Kohn came to my house and informed me that his safe had been burglarized the night before, and its contents stolen. I immediately went to the post-office, and on my arrival there found quite a crowd of citizens who had gathered on the announcement of the alleged burglary. I found on the counter in the store the wooden box in which the funds were kept, and the box was open and the funds were missing; and Kohn stated that he found the box on the sidewalk that morning while on the way from his residence to the store. The iron safe showed no signs whatever of violence. Neither door nor windows of the storehouse showed any signs of a forcible entry. Kohn kept the post-office funds in his safe at night without charge therefor. A few days after said alleged burglary, said intestate bought from me a post-office money order, and, paying for it, I instantly recognized

some peculiarly marked silver money which was a part of the $183 deposited in the safe on the night of the alleged burglary, and I called said intestate's attention to it at the time. He answered me evasively and in a somewhat offended manner, and went back down the store."

The Arkansas statute at that time applicable was similar to ours. In holding that this testimony was incompetent, the court said:

"The proffered testimony of the appellant to the effect that he had delivered to the defendant's intestate a box of money to be deposited in his safe was a 'transaction' with the intestate within the meaning of the proviso to section 2 of the Schedule to the Constitution, and inadmissible for that reason. The witness' knowledge that the box was in the safe was not competent evidence because it was derived solely from the transaction between the parties."

In *Cunningham, Adm'r, v. Phillips,* 4 Okla. 169, 44 Pac. 221, the syllabus is as follows:

"In an action brought by the defendant in error, plaintiff below, to recover a lot of ground in the city of Guthrie, claimed to have been leased by him to Charles A. Berger, and for which Berger obtained a deed without notice to the defendant in error from the board of town-site trustees, as is alleged, while he occupied the lot as a tenant of the defendant in error, and, Berger having died before the trial, Phillips, over the objection of the plaintiff in error, was permitted to testify that he had made the lease to Berger, who was at the times mentioned the lessee, and such testimony was material in the case to the conclusions reached by the court, *held,* that this was error, and that the testimony should not have been received."

See, also, note in connection with the report of *Blount v. Blount,* 21 L. R. A. (N. S.) 755.

This evidence being inadmissible, the only remaining question is whether the memorandum, the note for $400 previously given, and the note for $800 sued on, together showed that the Arkansas statute prohibiting the taking of usury was violated. That statute is Mansf. Dig. of Ark., sec. 4732 (Ind. T. Ann. St. 1899, sec. 3043), and is as follows:

"All contracts for a greater rate of interest than ten per centum per annum shall be void as to principal and interest, and the General Assembly shall prohibit the same by law; but, when

no rate of interest is agreed upon, the rate shall be six per centum per annum."

It is manifest that these instruments, taken alone, do not show that a usurious rate of interest was agreed upon by the parties, but the most that they can show is that the deceased submitted a statement, showing in that statement an item of usurious interest. They do not show that the defendant agreed to pay that amount of interest, or that it was actually reserved. The burden of proof rests upon the defendant to establish his defense of usury, and this must be established by evidence and not by mere supposition, and one of the essential elements of usury is the agreement to pay it, or the retention of it, or the contract for it, and not a mere offer by the lender to charge it. *Aetna Building & Loan Ass'n v. Randall,* 23 Okla. 45, 99 Pac. 655; *Merchants' & Planters' Nat. Bank of Mill Creek v. Horton,* 27 Okla. 689, 117 Pac. 201.

As the incompetent evidence was necessary to the decision of the case reached by the trial judge, the judgment should be reversed and the cause remanded for further proceedings in accordance with this opinion.

By the Court: It is so ordered.