### FUSS v. COCANNOUER.

No. 8725—Opinion Filed May 14, 1918.

(172 Pac. 1077.)

**1. Appeal and Error—Trial—Demurrer to Evidence — Disregarding Incompetent Evidence.**

In considering a demurrer to the evidence, the trial court may disregard incompetent testimony, admitted over proper objections, and on appeal to this court from a ruling sustaining a demurrer to the evidence, incompetent evidence, admitted over objection, will not be considered for the purpose of reversing such ruling.

**2. Witnesses—Competency — Implied Contract with Decedent.**

Under the provisions of section 5049, Rev. Laws 1910, a party to a civil action against the administrator of the estate of a decedent is incompetent to testify, in his own behalf, to facts which will raise an implied contract between such party and the decedent.

**3. Appeal and Error—Review—Demurrer to Evidence.**

When there is no competent evidence rendered tending to support the plaintiff's case, the judgment of the trial court, sustaining a demurrer to plaintiff's evidence, will not be reversed.

(Syllabus by Rummons, C.)

Error from District Court, Pawnee County; Conn Linn, Judge.

Action by G. B. Fuss against C. H. Cocannouer, as administrator of the estate of Margaret Cocannouer, deceased. Judgment for defendant, and plaintiff brings error. Affirmed.

Edwin R. McNeill, for plaintiff in error.

Claude C. McCollum, for defendant in error.

Opinion by RUMMONS, C. This action was commenced by the plaintiff in error, plaintiff below, against the administrator of the estate of Margaret Cocannouer, deceased, to recover the sum of $350 lent by the plaintiff to decedent to purchase the improvements upon a homestead situated in Pawnee county. Plaintiff had theretofore presented his claim for said sum to the administrator, which claim was disallowed. At the trial the court sustained a demurrer to the evidence of the plaintiff and rendered judgment for the defendant, to reverse which the plaintiff prosecutes this proceeding in error.

The substance of the material testimony for plaintiff, as set forth in his brief, is that of one George W. Hall, witness for defendant, who testified as follows:

"Mrs. Cocannouer seemed to be very desirous of getting this land in some way as a home, but said she did not have any money, and she was getting pretty old, and did not see how she could make this expense. Mr. Fuss said in substance that if she wanted the land, and wanted to go ahead with the contest, that they would get through with it some way, meaning as I understand it that he would furnish the money necessary and that she could settle with him later. After some further conversation Mrs. Cocannouer said in substance that it seemed like going to a whole lot of trouble and expense, but that he (meaning Mr. Fuss) would get it all back some day, or words to

that effect. * * * It was my understanding at the time that Mr. G. B. Fuss, was advancing the money to make the payment. Q. Did you have any conversation with Mrs. Cocannouer about this transaction at any time after said contest was finally settled? A. About the year 1902 or 1903 I called on Mrs. Cocannouer at her home on the land in question to arrange for a settlement for money still due me as attorney in looking after this contest case. This was at her home on the land in question or above described. In this conversation we had some talk about the money that was due Mr. Fuss, which had been advanced by him in payment for these improvements and the contest expenses. I do not now remember definitely just what proposition I submitted to her, but I do remember that she told me she did not want to do anything at that time, because one of the boys objected, and she had to rely on him to some extent for a living, but she intended to fix it so that George (meaning G. B. Fuss) would get all that was coming to him some day."

The plaintiff, over the objection of the defendant, testified as follows:

"Q. Did you have any—pay any money to Mr. Kuenzenmeier of Junction City, Kan.? A. I did. Q. State the amount that you paid to Mr. Muenzenmeier. A. I paid him about $250. Q. I will hand you—at that time did you execute a mortgage? A. I did. Q. I will hand you that exhibit, and ask you if that is the mortgage you gave for the security of that money. A. That is. Q. Was that money paid by you afterwards? A. Yes, sir. Q. What was the consideration for the giving of that mortgage—what was the money for? A. It was the heir of the relinquishment for the improvements."

In Nance v. Oklahoma Fire Insurance Co., 31 Okla. 208, 120 Pac. 948, 38 L. A. A. (N. S.) 426, this court says:

"In considering a demurrer to the evidence, a trial court may disregard incompetent testimony admitted over proper objections; and, on appeal to this court from a ruling sustaining a demurrer to the evidence, incompetent evidence admitted over objection will not be considered for the purpose of reversing such ruling."

See Bank of Commerce of Ralston v. Gaskill, 44 Okla. 728, 145 Pac. 1131; Clinton National Bank v. McKennon, 26 Okla. 835, 110 Pac. 649.

Applying this rule to the instant case, was there any competent evidence to sustain a verdict for the plaintiff? Section 5049, Rev. Laws 1910, provides as follows:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner, or assignee of such deceased person, where such party had acquired title to the cause of action immediately from such deceased person."

In Conklin v. Yates, 16 Okla. 266, 83 Pac. 910, the territorial Supreme Court says:

"Counsel for plaintiff in error argues that the statute forbids only communications had 'personally' with the deceased; that is, that the statute only contemplates preventing one party from testifying as to conversations had with the deceased. We do not agree with this contention. The evident purpose of the statute is to prohibit a party testifying in his own behalf in respect to any transaction or communcation had with a deceased person individually. To hold otherwise would open the door for the greatest fraud and this because the lips of his adversary are closed by death, and he cannot be heard to give his version of the conversation."

The case last cited was quoted with approval in MacDonald v. McLaughlin et ux., 32 Okla. 584, 123 Pac. 158, where this court says:

"No party shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner, or assignee of such deceased person, where they have acquired title to the cause of action immediately from such deceased person."

There was no competent evidence in the record of any express contract between plaintiff and the deceased, and under the foregoing rule the evidence of the plaintiff that he had expended the sum of about $250 for the use and benefit of the defendant was also incompetent, for the reason that, in an action upon an implied contract with the decedent, the plaintiff is not competent to testify in his own behalf to facts which would raise such an implied contract. The facts from which an implied contract might be inferred constitute a part of the transaction with the decedent, and therefore evidence as to such facts comes within the inhibition of such statute. 40 Cyc. 2318; 12 Enc. Ev. 886.

The evidence of the witness Hall was clearly incompetent to establish an express contract between plaintiff and decedent, for the reason that he does not testify to any conversation between plaintiff and decedent which would show an express contract between them for the plaintiff to furnish money to the decedent, but only testifies to his understanding. His testimony as to the conversation with the decedent after she had acquired and made settlement upon the

homestead is probably sufficient to establish an admission of liability, but the amount thereof is nowhere fixed by any competent evidence. Where there is no competent evidence reasonably tending to support the plaintiff's case, the judgment of the trial court sustaining a demurrer to the plaintiff's evidence will not be reversed.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.