Note.—See under (1) 41 C. J. p. 321, §81; anno. L. R. A. 1916B, 127; 19 R. C. L. pp. 246, 247. (2) 41 C. J. p. 498. §422; anno. L. R. A. 1916B, 602; 19 R. C. L. p. 428; 3 R. C. L. Supp. p. 946: (3) 39 Cyc. p. 1779. (4) 39 Cyc. p. 138; anno. 6 L. R. A. (N. S.) 381: 26 L. R. A. (N. S.) 161; 13 R. C. L. p. 1393. (5) 39 Cyc. pp. 1713, 1785. (6) 19 C. J. p. 1105. §113. 32 Cyc. p. 1356 (Anno.). (7) 4 C. J. p. 902, §2871; p. 1192, §3230; 39 Cyc. p. 160.

---

**PURDY, Adm'x, et al. v. CHAMBERS.**

No 17631.   Opinion Filed Oct. 25, 1927.

Rehearing Denied Nov. 29, 1927.

(Syllabus.)

1. **Witnesses—Incompetency to Testify as to Transactions with Persons Since Deceased.**

In an action for the recovery of real estate and damages for its detention against the administratrix and sons of a decedent, it is reversible error for the court to permit the plaintiff, over defendant's objection, to testify that decedent was his tenant and detail conversations and transactions over a period of years had with and promises and oral agreements made by decedent in connection with the rental by plaintiff to defendant of the real estate, the possession and rental value of which is sought to be recovered in the suit.

2. **Appeal and Error—Reversal of Judgment in Ejectment Action and Remand of Cause for Retrial of All Issues in Furtherance of Justice.**

Where, on appeal of defendant in an action of ejectment and for damages for detention, it is apparent that the cause was tried upon an erroneous theory permitting plaintiff to recover damages for rental value, but not the property itself, although plaintiff disclosed a perfect record title and apparent right of possession and no evidence was offered by defendant, the court will, in view of finding reversible error in the trial of the issue as to damages or rental value, in furtherance of justice, and in order that

litigation may end, reverse and remand the cause for trial on both issues where such issues are so closely related that the determination of one is dependent upon the correct determination of the other.

3. **Landlord and Tenant—Ejectment Against Tenant Denying Landlord's Title and Claiming Equitable Title and Pleading Limitations.**

Where a tenant denies the title of his landlord and sets up title in himself, and pleads the statute of limitations and sets up in himself equitable title to the land, and asks the court to declare the plaintiff the holder of the legal title in trust for said defendant tenant, an ordinary action of ejectment for the recovery of the property and for its rental value may be maintained.

Commissioners' Opinion, Division No. 2.

Error from District Court, Creek County; John L. Norman, Judge.

Action in ejectment by John S. Chambers against Mrs. Minnie Purdy, administratrix of the estate of A. H. Purdy, deceased, et al. Judgment for plaintiff, and defendants appeal. Reversed and remanded for new trial.

Cheatham & Beaver, for plaintiff in error.

Wayne H. Lasater and Edward DeFord, for defendant in error.

BENNETT, C. A civil action tried in the district court of Creek county, by and between John S. Chambers, plaintiff, against Mrs. Minnie M. Purdy, administratrix of the estate of A. H. Purdy, deceased, and Colaw & Scott, a copartnership, composed of A. L. Colaw and Lloyd Scott, and C. H. Purdy, Dwight Purdy and A. J. Combs, individually, defendants. From verdict and judgment in favor of plaintiff, there is an appeal by the defendants. The parties will be referred to as plaintiff and defendants, as they were designated in the trial court.

The petition of plaintiff contains two counts, and in substance they are as follows: That plaintiff is the owner of the legal and equitable title in fee simple, and entitled to the immediate possession of, certain real estate in Creek county, Okla., to wit, lot 9, block 60, in the original town of Bristow, according to the official plat, and there is attached to the petition and made a part thereof a copy of a deed from P. Porter, Principal Chief of the Muskogee (Creek) Nation, to John S. Chambers, dated July 5, 1905, recorded in town site record No. 1, at page 297, of the records of the office of the county clerk of Creek county, Okla., and that this deed covers said real estate above described and evidences plaintiff's

title in fee simple thereto; that Minnie M. Purdy is the duly appointed, qualified and acting administratrix of the estate of A. H. Purdy, deceased, such administration pending in the county court of Creek county in cause No. 3015; that the defendants are unlawfully withholding possession of said premises from plaintiff and converting the use, rents and profits therefrom to their own use.

The second cause of action: After adopting the allegations of the first cause of action, plaintiff further says that defendants are justly indebted to him for the use and occupancy of said premises from May 1, 1918, to October 1, 1924 in the sum of $3,665, with interest thereon at six per cent., all as shown by an account attached to and made a part of the second cause of action; that said claim is due for the use and occupancy of the premises aforesaid on contract, and that in addition thereto, the defendants are due him as rents on said premises from October 1, 1924, until paid, at $75 per month; that on November 26, 1924, plaintiff made demand upon the defendants and Mrs. Minnie M. Purdy, administratrix, as aforesaid, for the payment of said sum, and the same was denied and refused and that administratrix wholly failed to indorse upon said claim her allowance or refusal of the same, and that the said claim has been presented to her for more than ten days prior to the filing of this action, and plaintiff asks judgment for said sum; and also the usual rental value of said property, which is alleged to be $75 per month, and for all costs.

The answer of defendants is as follows:

"Comes now the defendants, Minnie M. Purdy, as administratrix of the estate of A. H. Purdy, and in her own proper person, and C. H. Purdy, and Dwight Purdy, and for their answer to the first supplemental petition herein filed and to each cause of action therein set forth, state:

"First. They deny each and every allegation made in the said first supplemental petition.

"Second. They hereby adopt and make a part of this answer the original answer filed in this cause as though set out herein at length."

The original answer, the allegations of which are adopted, is in substance as follows: First, a general denial, and for further defense the defendants state that the property in question was bought and paid for by A. H. Purdy, deceased, but that the deed therefor was taken in the name of John S. Chambers, and that the said John S. Chambers has never had possession of

said property, has never attempted to take possession of said property, or exercised control or ownership over same until after the death of said A. H. Purdy who died a few months ago, but that the said A. H. Purdy, from the date of the deed taken in the name of John S. Chambers, has enjoyed full and complete ownership, possession and control of said lot, and was from the date of the issue of said deed the legal owner of said property, and that the right of possession of said decedent was never questioned from the time of his purchase as shown by plaintiff's exhibit "A" until after the decedent's death in 1924. The said defendants therefore pray the court to declare a resulting trust in the said property, and declare that John S. Chambers holds the title to the same for the benefit of A. H. Purdy and these defendants as his personal representative and heirs at law.

They further plead the seven-year statute of limitations, and the 15-year statute of limitations, and allege that these defendants have been in the open, notorious and exclusive possession of the land since 1905. A. L. Colaw, Lloyd Scott, and A. J. Combs disclaim.

The following is the substance of the testimony:

John S. Chambers, plaintiff, lives in Joplin, Mo., most of the time; became acquainted with this property in Bristow in the fall of 1898, when he lived in said town; bought the property at that time, but did not get title to it; went into possession of it in the fall of 1898; that in 1901 he occupied the property and put a building thereon, and rented it out to Mr. Purdy, who was plaintiff's agent at that time. Purdy rented it to a barber and Mr. Purdy as his agent kept renting out the property for him until 1911, when plaintiff rented the property to Mr. A. H. Purdy himself, who occupied the same as his tenant from that date until his death in 1924. Mr. Purdy never claimed the property. In 1911 Purdy began to pay rent, $5 a month, until 1918, when he was to pay $25 a month. Purdy was to deliver possession of the property to the plaintiff in 1918, but at that time the war was on, and Purdy begged him to rent him the property a little longer, and that he did so at $25 per month for 23 months, after which he was to pay $45 per month. That was the agreement of Mr. Purdy from April 1, 1920, and that arrangement was to run for 32 months, but the plaintiff rented it to him for only a year at a time. Purdy simply kept it over and rented it without any conversation about the price. At the end of the 32 months plain-

tiff had another conversation with him, and told Purdy that he had not fulfilled the agreement to keep the taxes paid out of the rents, and that he could not have the property any longer; that Purdy then told him that he would take care of the taxes and thereafter pay him $75 a month as rent. Plaintiff never rented the property to any of the other defendants, but tried to get possession from them. He went to see C. H. Purdy's son and heir of A. H. Purdy, deceased, and asked him for the property, but was told that he would have a meeting with his mother and would let the plaintiff know about it. He put plaintiff off from time to time; that thereafter he met C. H. Purdy at the courthouse in Bristow and he wanted to know if plaintiff wished to rent the place to him that night. The plaintiff told him "No," that he did not wish to rent it to him at all; that he wanted possession of it for his own use; that C. H. Purdy said in that conversation that he wanted to rent the property; that C. H. Purdy never did tell him that his father's estate claimed the property. There is introduced in evidence a party wall contract which shows that on August 8, 1914, A. H. Purdy, then a notary public, prepared and took proof of a party wall contract between W. W. Lee and plaintiff in which it was stated that W. W. Lee of Bristow, Okla., was the owner in fee of lot 8, block 60, and that John S. Chambers was the owner in fee simple of lot 9 in block 60 of the town of Bristow, and that this contract was mailed to plaintiff by A. H. Purdy. There is introduced a letter from A. H. Purdy dated 7-17-1919 to plaintiff asking permission to move a house onto the lot and agreeing to pay $5 per month for the use of the lot so long as the house remained there, or to remove it from the lot at any time plaintiff desired. Also a letter from A. H. Purdy to plaintiff, dated March 1, 1920, referring to the lot in Bristow as belonging to the plaintiff and saying that the writer would like to buy the lot or secure a long lease on it so that he could put a building on it for his own office and prepare a basement under the building for the use of his son-in-law, a plumber. In this letter the writer offers to pay $5,000 for the lot, and discusses the terms of payment, and also asks if it cannot be bought, the terms on which he might lease it for a year. Numerous tax receipts showing payment by plaintiff of the general and special taxes on this property for many years. A statement of W. W. Lee to the effect that Mr. Purdy told him that Mr. Chambers owned the lot, and that Mr. Purdy made no claim to it. C. H. Purdy, one of the defendants, called

by plaintiff testified that his father either personally or through tenants had been in actual possession of the property since 1898, but he did not testify that he ever heard his father for himself or for any member of his family claim that the property belonged to him or to the Purdy family. There was some other collateral evidence that tended to substantiate the plaintiff's claim to ownership.

In the opening statement of plaintiff's attorney, after asserting that the action was for the recovery of possession of lot 9, in block 60, and for rents, is the following language:

"We think the evidence will show that Mr. Chambers purchased the lot early before statehood from the Town Site Commission, and it was duly patented to him and he has been in possession of it ever since that time, in the open and notorious possession of it; that during the lifetime of A. H. Purdy he was occupying the building as a tenant of Mr. Chambers, and since his death his administratrix and heirs have occupied the property and have claimed to own the same since his death. If we establish the ownership of Mr. Chambers we shall expect a verdict at your hands."

Whereupon counsel for the defendant made the following motion:

"Comes now the defendants and each of them upon the pleadings of the plaintiff and on the opening statement of counsel, move the court to dismiss this action for the reason that the counsel for the plaintiff has stated in open court and says that Mr. Chambers at all times has been in possession of the property and is now in possession through his tenants, and this being an action in ejectment it cannot be maintained on that theory and on that statement. He is bound by that statement."

There followed a statement to the jury and court by counsel for the defendants saying that A. H. Purdy in 1901 and 1902 bought and paid for this lot and caused the same to be conveyed by the Town Site Commission to plaintiff, John S. Chambers, and that said Purdy and his administratrix occupied the same continuously thereafter; that they knew nothing of the claim of plaintiff until the fall of 1924, and he says, further, that the heirs probably knew that Mr. A. H. Purdy had purchased more than his quota of lots under the law, and were probably afraid that the Creek Nation would take the lot away from him if Mr. Chambers were sued for title to the lot. At the conclusion of the evidence, the court sustained demurrer on behalf of C. H. Purdy and Dwight L. Purdy. There was a motion for directed verdict for all of the defend-

ants, and a demurrer to the evidence by all of the defendants which demurrer and motion were sustained with the exception of those interposed for Minnie M. Purdy, as administratrix of the estate of A. H. Purdy, deceased, and the court directed the jury to return a verdict in favor of the defendant, Minnie M. Purdy, administratrix of the estate of A. H. Purdy, deceased, and against the plaintiff upon plaintiff's first cause of action.

This left only the second cause of action of plaintiff as between the plaintiff and defendant, Minnie M. Purdy, administratrix, to be passed upon by the jury, that is to say, the action for recovery of $3,665 for the use and occupancy of the premises involved in this action from May 1, 1918, to October 1, 1924, and the further sum of $75 per month for use and occupancy from October 1, 1924, until suit brought. The court further charged the jury as follows:

"You will, therefore return a verdict in this case upon plaintiff's said second cause of action in favor of the plaintiff and against the defendant, Minnie M. Purdy, as administratrix of the estate of A. H. Purdy, deceased, in such sum as you shall find from a fair preponderance of the evidence is the reasonable rental value for the use and occupation of said premises during the time the same were occupied by the said A. H. Purdy, now deceased, and his said administratrix, defendant Minnie M. Purdy."

There was returned in court by the jury the following verdict:

"* * * We, the jury impaneled and sworn in the above-entitled cause, do upon our oaths find for the plaintiff and against the defendant Minnie M. Purdy as administratrix of the estate of A. H. Purdy, deceased, upon plaintiff's second cause of action, and fix the amounts of his recoveries as follows:

"Rentals up to and including October 1, 1924 ------------------------------ $3,080.00
"Rentals from October 1, 1924, to this date ------------------------------ 560.00."

Plaintiff in error in his brief relies upon two propositions: The first is that the evidence of John S. Chambers, plaintiff, admitted over the defendants' objection, constituted reversible error; and second, that the court erred in submitting to the jury the question of rents and profits. The following is the testimony objected to. The plaintiff was asked if he had ever rented the property to A. H. Purdy during his lifetime, to which he replied, "Not until after 1911," at which time the objection of the defendant was made in the following language:

"We object to the testimony of this wit-

ness for the reason that this witness is incompetent to testify to any transaction occurring between him and the deceased, A. H. Purdy, under the statutes."

The following question was then asked by the plaintiff:

"Q. Did you ever rent the property to A. H Purdy, deceased?"

The answer was. "Yes, sir."

And the following agreement was had between the parties:

"Mr. Cheatham: Might it be understood that our objection goes to all of these questions? By the Court: Yes, sir; and the same ruling By Mr. Cheatham: Defendant excepts."

Then over the objection of defendants, plaintiff was permitted to testify that he orally rented the property to A. H. Purdy in 1911 for a valuable consideration, and that Mr. Purdy continued in possession of the property until the time of his death, and that the rental was by agreement from $5 per month up to as high as $75 per month.

There was later a motion made by the defendants to strike from the consideration of the jury all of the testimony of this witness because he is incompetent to testify against the defendant in this action, which motion was overruled and exception.

"No party to a civil action shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person. when the adverse party is the executor. administrator. heir at law, * * * of such deceased person where such party has acquired title to the cause of action immediately from such deceased person. * * *" Section 588, C. O. S. 1921.

We think the evidence introduced was in violation of the plain provisions of the above statute, and the following cases will be found sustaining this position: Richardson v. Strother, 55 Okla. 348, 155 Pac. 528; Conklin v. Yates, 16 Okla. 266, 83 Pac. 910; Vance v. Whitten, 51 Okla. 1, 151 Pac. 567; Cunningham, Adm'r, v. Phillips, 4 Okla. 169, 44 Pac. 221 (the facts in this case were almost identical with the facts in the instant case, it being sought to show an oral lease by the plaintiff made with' defendant Berger. deceased); MacDonald v. McLaughlin, 32 Okla. 584, 123 Pac. 158; Wadleigh v. Parker, 34 Okla. 213, 124 Pac. 957; Bellamy v. Bellamy, 93 Okla. 286, 220 Pac. 844; Scott v. Scott, 111 Okla. 96, 238 Pac. 468; Fuss v. Cocannouer, 70 Okla. 36, 172 Pac. 1077.

It is quite possible that the plaintiff, if the ruling of the court on this evidence had been unfavorable to him, might have produced other evidence on the point, and thus supplied competent evidence upon which the issue might have been properly determined. This evidence also supplied the jury with facts upon which to make its findings as to the rental value of the premises, for they were told in direct terms by the incompetent witness that the deceased orally contracted to pay rental for the premises at the price which must have been substantially adopted and accepted by the jury, for it may be seen at a glance that their finding on this issue is almost identical with the contract price orally agreed upon between the plaintiff and the deceased according to the testimony of plaintiff. Therefore. this was a very material issue, and the evidence in support thereof was very material and prejudicial to the defendant, and the admission of this evidence constituted reversible error.

The defendant asks a reversal of this cause upon the sole issue of rental value of the premises determined by the jury, upon the ground that he was content with the finding of the court upon the other issue as to the possession of the property. This situation calls for further consideration by the court. The plaintiff filed his action and by his petition sought to recover a piece of real estate and also damages for its detention, or the reasonable, usable value during such detention. The petition alleged the ownership of the property in the plaintiff. the wrongful and unlawful detention of the same by the defendant, and the rental value thereof and alleged that the plaintiff had been deprived of its use. The plaintiff set out his title direct from the Principal Chief of the Muskogee (Creek) Nation approved by the Department of the Interior September 18, 1905. The defendant answered by general denial and set up as a further defense that while the plaintiff held the legal title under the patent or conveyance referred to above, and designated as plaintiff's Exhibit "A", in fact, A. H. Purdy whose administratrix and sons are defendants herein and hold the possession of the premises claimed, as his heirs at law and personal representative, bought said property and paid for the same out of his own funds, but caused the same to be conveyed to the plaintiff and held in his name, and they further allege that the plaintiff paid no consideration for said land, but that he was simply a naked trustee holding said premises for the benefit of said A. H. Purdy, deceased. and praying the court to execute and recognize the resulting trust and to declare that the defendants were the holders of the legal and equitable title.

thereto, and to declare that the plaintiff had no right, interest or title therein, and after proper reply, the issues logically following said pleadings arose between the parties plaintiff and defendants.

It is true that in the opening statement plaintiff's counsel announced the plaintiff rented this land to A. H. Purdy, and that his personal representative and his heirs simply remained in possession of the property, but he also announced that they claimed title in themselves and denied the title of plaintiff, and the pleadings of defendants bore out literally this contention. Now, at this stage of the cause, the court sustained demurrers of defendants with reference to the first cause of action, that is, plaintiff's title and claim to the possession of the premises, the issue as to which had been clearly drawn in the pleadings. Nevertheless, the court permitted the jury to pass upon the amount of damages or the rental value of the premises, and gave plaintiff the right to recover the same, and finally a judgment therefor. Upon what theory this course was followed we cannot quite make out. The result was that the court adjudged that the plaintiff was not entitled to recover the land, but rendered judgment in his favor for the rental value, and since this case must be reversed for the substantial error with reference to the admission of prejudicial testimony, we are moved to reverse this cause generally and to grant a new trial to the end and purpose that the real issues in this cause may be properly tried and determined. To do otherwise would be to permit the plaintiff, after having brought a proper suit for the recovery of his property, to recover in this action only his damage for the detention thereof and leave him to further litigation in another suit or suits to recover his real estate. That does not comport with the purpose of our pleadings or our courts. Every effort should be exercised to minimize and to shorten instead of to aggravate and extend litigation.

It may be contended that the defendants were the plaintiff's tenants, and that no precedent notice to vacate had been given, and therefore no action of ejectment would lie. This contention could hardly be sustained when the solemn pleading of defendants sets out title in themselves and denies the title of plaintiff, and asks for equitable relief, to wit, the declaration of a resulting trust in and to the property the legal title of which rested in the plaintiff. Hobbs v. McGhee, 100 Okla. 210, 229 Pac. 240. The legal title to this real estate was the main issue to be determined in this case under the pleadings. It is quite true that under our law a tenant may not deny the title of his landlord, but the pleadings in this case did not disclose the relations; and, in fact, even under the statement of counsel one of the vital issues to be determined was whether or not the relationship existed, for while the plaintiff's counsel indicated that the proof would show a rental to the defendants and a subsequent denial of the landlord's right, the defendants' pleading and counsel in his opening statement for the defendants set up a general denial, which put in issue this fact as to tenancy, and in addition set up the equitable ownership in the defendants.

We can come to but one conclusion after looking over this entire record, and that is that the court and counsel tried this case upon an erroneous theory, and there being no sufficient findings of fact or admissions of counsel to warrant this court in passing finally upon any issue which even might partially dispose of the litigation between them, we find ourselves compelled to reverse this cause for a trial upon all the issues in conformity with this opinion.

"The granting of a new trial on reversal is largely although not entirely a matter of discretion with the appellate court." 4 C. J. p. 1193 (citing Cowles v. Coe, 21 Conn. 220; Justices Inferior Ct. v. Griffin, etc., Plank Road Co., 15 Ga. 39; Herring v. Hock, 1 Mich. 501; Fries v. Pennsylvania R. Co., 98 Pa. 142).

Whenever it appears that the ends of justice will best be served, a new trial will be ordered. Wiggins Ferry Co. v. Ohio, etc., R. Co., 142 U. S. 396, 35 L. Ed. 1055; Dillingham v. Allen, 205 Fed. 146; Foster v. Beidler, 81 Ark. 274, 98 S. W. 968.

In the case of Humboldt Savings Bank v. McCleverty (Cal.) 119 Pac. 82, the court said:

"Where it is probable that the facts authorizing the decree rendered exist, though the pleadings and findings do not disclose such facts, the court, on appeal, adjudging the decree erroneous, will not order judgment for the party complaining, but will reverse the case so that the facts can be established and a proper decree rendered."

"A new trial will generally be granted where the judgment is reversed, * * * and the rule is especially applicable where, by an erroneous ruling of the trial court, either party is led into the error of not fully developing his side of the case." 4 C. J. pp. 1199-1200.

"Except in some jurisdictions where the appellate court has constitutional or statutory authority to find facts at variance

with those found by the trial court, it will not generally undertake to render or order final judgment, on reversal, where the facts in issue are not fully developed or definitely settled, but will in such case order a new trial. The rule is applicable where the evidence is obscure, indefinite, uncertain, or otherwise unsatisfactory; and it is especially applicable where, by reason of erroneous rulings of the lower court, either party has been prevented from fully developing the merits of his case." 4 C. J. p. 1199 (citing cases from Alabama, Arkansas, California, Florida, Indiana, Iowa, Kansas, Kentucky, and many other states).

The case of Wolf v. Phillips, 107 Ark. 374, 155 S. W. 924, holds that, where the plaintiff in ejectment shows that the tax title under which defendant claims is invalid, but his evidence of title by adverse possession is indefinite and uncertain, the court, on appeal from an erroneous judgment for defendant, will grant a new trial. To the same effect: Inman Mfg. Co. v. American Cereal Co., 142 Iowa, 558, 119 N. W. 722. See, also, Gaither v. Gage, 82 Ark. 51, 100 S. W. 80. This last case was tried upon an erroneous theory by reason of which the court granted a new trial.

On the question of the possession of the tenant and the right of the landlord to sue him in ejectment, see 9 R. C. L. page 866, under the title "Ejectment," as follows:

"Without regard, however, as to whether or not the tenancy is of such a nature as to require a demand of possession or notice to quit in order to terminate the relation, it is well settled that the tenant may, by his own wrongful act, dispense with the necessity of such notice as a prerequisite to the action of ejectment; as, for instance, where he disclaims the title of the lessor, or attempts to set up title under another" (citing Williams v. Cash, 27 Ga. 507, 73 Am. Dec. 739; Meraman v. Caldwell, 8 B. Mon. [Ky.] 32. 46 Am. Dec. 537; Jackson v. French, 3 Wend. [N. Y.] 337, 20 Am. Dec. 699; Springs v. Schenck, 99 N. C. 551, 6 S. E. 405, 6 A. S. R. 552; Duke v. Harper, 6 Yerg. [Tenn.] 280, 27 Am. Dec. 462 and note).

"On reversal of a judgment or decree, an appellate court will remand for a new trial or for other appropriate proceedings, where one or more material issues in the case were not passed on and determined at the trial either by the court or by the jury." 4 C. J. p. 1201, and note 42.

The court in the case of Sullivan v. Williamson et al., 21 Okla. 844, 98 Pac. 1001, uses the following language:

"The petition stating a good cause of action, it was error for the court below to sustain a motion to dismiss the cause and render judgment against the plaintiff upon the

opening statements of his counsel. 'Such a motion will not be granted merely because counsel failed to state in his opening statement facts sufficient to constitute a cause of action.' Sewart v. Hamilton, 3 Rob. (N. Y.) 672. A dismissal at the opening on the strength of the insufficiency of the statements of counsel for plaintiff is erroneous, as the evidence might, notwithstanding the opening statement, warrant a recovery. Fisher v. Fisher, 5 Wis. 472; Haley v. Western Transit Co., 76 Wis. 344, 45 N. W. 16."

The only possible theory upon which the court below could sustain a recovery of the damages or rents and profits from the defendants in favor of plaintiff was that the plaintiff was in fact the owner of the property. The plaintiff, without objection, introduced a perfect paper record title, which generally draws to it the right of possession. The defendant admitted the legal title in plaintiff, and there was considerable oral testimony and also evidence in writing signed by A. H. Purdy admitting in no uncertain manner the ownership of the property by the plaintiff and his right thereto, and notwithstanding all this proof, the only issue in the case which would have disposed of the contentions of all parties was omitted—was not passed upon. It is the business of courts to pass upon substantial issues in order that there may be an end of litigation.

"Where the landlord has become entitled to possession, he may recover such possession in an action of ejectment." 36 C. J. pp. 604-5 (citing Marcus Brown Holding Co. v. Feldman, 269 Fed. 306, aff. 256 U. S. 170, 65 L. Ed. 877; Shannon v Long, 180 Ala. 128, 60 South. 273; Cassidy v. Clark, 62 Ga. 412; Blocker v. McLendon, 6 I. T. 481, 98 S. W. 166; Morse v. Clayton, 21 Miss. 373; Carter v Carter. 237 Mo. 624; Hamill v. Jalonick. 3 Okla. 223. 41 Pac. 139; U. S. v. Gonzalez, 4 Philippine, 487; Roach v. Heffernan, 65 Vt. 485; Bowyer v. Seymour, 13 W. Va. 12.)

"The ordinary common-law remedy by which a landlord may recover possession is the action of ejectment." Allen v. Houn, 29 Wyo. 413, 213 Pac. 757.

"An unlawful detainer or other summary proceeding provided by statute for recovery of possession by a landlord from a tenant constitutes simply an additional and cumulative remedy." Denicke v. Miller, 142 Ia. 486, 119 N W. 380; Hall v. Haywood, 77 Tex. 4, 13 S. W. 612.

It is permissive (Allen v. Houn, supra) and not exclusive. Chicago, Great Western R. Co. v. Iowa Central R. Co., 142 Iowa, 459-470, 119 N. W. 261.

While plaintiff sets out what he is pleased to designate two causes of action, looked at

broadly they would seem to constitute but a single cause of action dependent upon one redressible wrong—the withholding of plaintiff's land. Two separate causes of action would necessarily imply the right to recover in one, both or neither. To apply this test in the instant case would involve an absurdity. Could plaintiff recover the rental value of lands which he did not own, and especially against the true owner? Could the owner fail to recover the rental value of his lands against a wrongdoer who detains them? The issue of title and the right to rental are so closely linked, so interdependent, that they are inseparable. If one falls the other must likewise fall. If plaintiff is entitled to rental he is entitled to the property. If he is not entitled to rental he is not entitled to the property. If he is entitled to either, he is entitled to the other. And since the issue as to the recovery of rental value is before us upon the appeal of defendants and since that issue depends upon and is incident to ownership, it is only fair, if the case is to be reversed as to the issue of rental value, that the issue of ownership, which will determine both, should be adjudicated.

It appears clear that this case was tried upon an erroneous theory, and that the defendants actively invited the error on the part of the court. If the plaintiff is in fact a trustee for defendants, it should be shown and the title to this property cleared. On the other hand, if the plaintiff is the owner thereof, his title should be adjudicated.

The court is therefore moved, in furtherance of justice, and in order that litigation may cease, to order that this cause be reversed and remanded and a new trial granted, in order that all issues determinative of this controversy may be disposed of in conformity herewith, and it is so ordered.

DIFFENDAFFER, HERR, JEFFREY, and HALL, Commissioners concur.

By the Court: It is so ordered.