## MIRACLE v. JONES et al.

No. 18719.  Opinion Filed Dec. 10, 1929.

Rehearing Denied Feb. 18, 1930.

Commissioners' Opinion, Division, No. 2.

. Jess. I. Miracle and William Neff, for plaintiff in error.

Wright & Frerichs and Phillips, Duling & Porta, for defendants in error.

HALL, C.  The plaintiff in error, V. W. Miracle, who was plaintiff in the trial court, commenced this action in the district court of Okfuskee county to reform a deed executed by one Berry Jones, conveying certain lands to one C. T. Huddleston, plaintiff's immediate grantor.  At the time the action was commenced, Jones was deceased, and his heirs were the parties against whom the suit was brought.

The facts as established by the only competent evidence introduced, disclosed that plaintiff and C. T. Huddleston were interested in, and succeeded in getting approved by the county court, a conveyance of certain inherited lands of some full-blood Indians. Jones was grantee in the deed.  It appeared at the trial that plaintiff and Huddleston had actually paid at least three-fourths of the consideration money recited in the deed. That, however, is not a decisive factor in this case.

Shortly after the conveyance to Jones was approved, Jones conveyed an undivided one-half interest in and to the land to plaintiff. The quantity of interest conveyed in this deed was described in the following language:  "One-half of all my right, title, interest and estate in and to the following described real estate (describing it)."  About one year thereafter, Jones executed to C. T. Huddleston a deed of an undivided interest in the same land, and in defining the interest, the same language which was employed in the deed to Miracle was employed in the deed to Huddleston; that is, the deed was couched in this language: "* * * One-half of all my right, title, interest and estate," etc., and describing the land.

It will be observed that the first deed, or the deed to Miracle, conveyed an undivided one-half interest in the land, leaving an undivided one-half interest still vested in Jones; and that Jones' deed to Huddleston, instead of conveying all of his interest, which was a one-half undivided interest, conveyed only one-half of his remaining interest, which was one-fourth, leaving remaining in Jones an undivided one-fourth interest in and to the lands.  About two years thereafter, Huddleston conveyed to plaintiff (V. W. Miracle) all his right, title and interest in this land.

Jones died in 1920.  The plaintiff went into possession of the land at or about the time the first deed was acquired from Jones, and has remained in undisturbed possession of the land ever since.  In 1924, the plaintiff was contemplating the sale of a oil and gas lease on the land, and he submitted an abstract of title to the legal department of some oil company whose attorneys objected to the title because of the outstanding one-fourth interest in the heirs of Jones.  After negotiations between plaintiff and the heirs

of Jones failed to acquire the outstanding interest by plaintiff, he commenced this action to reform the deed executed by Jones to Huddleston, and to cause such deed to read, in substance, all his undivided one-half interest, or all his right, title and interest in and to the premises. The trial court, after hearing considerable testimony denied the plaintiff relief.

Plaintiff, in bringing the action, in addition to making the heirs of Jones defendants, made C. T. Huddleston, the grantee in the Jones deed, a party defendant. It is alleged in the petition that Huddleston refused to join as a party plaintiff. He, of course, was a necessary party to the action. It was the deed to him which plaintiff was seeking to reform. Huddleston was permitted to testify to the transaction in regard to the acquisition of this land, and the nature of Jones' interest thereon. Miracle, the plaintiff, was also permitted to testify in regard to this transaction. The court, however, reserved his ruling on the competency of this testimony, which was timely objected to, and no doubt in rendering his decision concluded that the testimony was incompetent and inadmissible under Comp. Stat. 1921, sec. 588, which reads as follows, to wit:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; nor shall the assignor of a thing in action be allowed to testify in behalf of such party concerning any transaction or communication had personally by such assignor with a deceased person in any such case. * * *"

The testimony of plaintiff and Huddleston tended to show that Jones was nothing more than a naked trustee in holding title to this land, and that the title was placed in him for convenience and expediency in getting the title approved by the county court; and that Jones never had any interest whatever in the land. This testimony of plaintiff and defendant Huddleston was wholly incompetent to prove the transaction necessary for plaintiff's recovery. Huddleston, who was a capable lawyer, and engaged in the active practice of law, drew the deeds conveying the land from Jones to Miracle, and from Jones to himself. Both plaintiff and Huddleston, in testifying, carefully avoided relating any "communication" had with Jones, the deceased, but testified freely "in respect to the transaction," and by indirection their testimony on its face established a good cause of action in plaintiff. But it must be observed that the prohibition against the use of this testimony is as equally pronounced where the transaction is attempted to be established indirectly, as well as directly. Jones' Commentaries on Evidence (2nd Ed.) vol. 5, sec. 2262; Fuss v. Cocannouer, 70 Okla. 36, 172 Pac. 1077. In this case, the rule is announced in the second paragraph of the syllabus as follows:

"Under the provisions of section 5049, Rev. Laws 1910 (Comp. Stat. 1921, sec. 588), a party to a civil action against the administrator of the estate of a decedent is incompetent to testify, in his own behalf, to facts which will raise an implied contract between such party and the decedent."

The author of Jones on Evidence, after quoting the text-writer, Underhill on Evidence, states that:

"This view is concurred in by the majority of the courts."

Such is the settled rule in this jurisdiction.

It must be observed that the statute (sec. 588, Comp. Stat. 1921), in enumerating the class of inhibitions, uses the term "in respect to any transaction or communication." (Emphasis ours.) On this point, Justice Riley, in the recent case of Barrows v. Alford, 129 Okla. 265, 264 Pac. 628, discussing this particular subject-matter, said:

"The appellee urges that, while the witness would be disqualified to testify to conversation between himself and Mr. Barrows, deceased, concerning this transaction, yet he would be qualified to testify as to the conversation concerning the transaction between the deceased and Patrick, the scrivener.

"We hold against this theory. The statute makes a party to a civil action incompetent to testify in his own behalf, in respect to any transaction or communication had personally with another since deceased, when the adverse party is of the enumerated class of legal representatives of the deceased person. If the facts here do not establish a 'communication had personally by such party,' they undoubtedly come within the inhibition of 'in respect to any transaction.' The force of the statute cannot be avoided or circumvented by a showing that the alleged statements were made by the person, since deceased, to another, though in the presence and hearing of the surviving interested party. Such party plaintiff cannot testify about such communication or transaction. American Trust Co. v. Chitty, 36 Okla. 479, 129 Pac. 51; Wadleigh v. Parker, 34 Okla. 213, 124 Pac. 959; Wills v. Wood, 28 Kan. 400. Particularly is this applicable when the communication is addressed to a

scrivener who is acting as agent of the interested parties."

As stated in a preceding paragraph, it was the deed from Jones to Huddleston which the plaintiff was seeking to reform, and therefore Huddleston was a necessary party to the action—a necessary party plaintiff or a necessary party defendant, in case he refused, as alleged in the petition in this action, to join as a party plaintiff. A universal rule of procedure is that where a necessary party plaintiff to an action refuses to join therein as such, he may be joined as a party defendant. Huddleston was an adverse party, and therefore falls within the prohibited class enumerated in said section 588 of the statutes. Huddleston could not testify or gain a benefit which the law did not extend to Miracle. That rule rests upon reason. An analogous principle was announced in the case of Allen v. Kinnebrugh, 93 Okla. 42, 219 Pac. 676, in which it was held:

"In a will contest, the wife of one of the contestants or contestees is not a competent witness for her husband, or for any of the other parties joined with him as contestants or contestees, because they have a common interest in the same question, to wit, the validity of the will. All must stand or fall together, and the interest of one could not be separated from the interest of the others."

This principle is well illustrated in 5 Jones' Commentaries on Evidence, sec. 2250, in which the author quotes as a part of his text the case of Kempton v. Bartine, 59 N. J. Eq. 149, 44 Atl. 461, as follows:

"Equity regards the essential truth and not the form or color of the matter presented, and will not, because its practice permits the association of opposing parties as defendants, declare them not to be opposite parties and deprive them of rights to which as opposite parties they may be entitled. * * * The case under consideration is of itself an example. The contract, as alleged, was made solely between the complainant and the decedent, but all the benefits were to come to his wife and children. They should have been made complainants had the parties been properly classified. Had this been done they, without doubt, could not, because of the prohibition of the statute, have testified to prove the contract with the decedent now sought to be enforced. It is now claimed that the mere voluntary classification by the complainant of these beneficiaries as defendants makes them competent to testify within the prohibited range. This is not the purpose or spirit of the legislation on the subject. The court of appeals, in a matter involving, as does this case, the competency of testimony, declared that it is the province of the court to so control

the conduct of a cause and regulate its practice that no unfair advantage is taken by either side in presenting the merits for decision.' * * *

"The complainant, however, prays no relief against Mrs. Kempton or against any of her children, nor does the bill show any ground for discovery from them. No reason appears for making them defendants rather than complainants, and it may, without violent presumption, be believed that Mrs. Kempton was put in as a defendant rather than a complainant, in anticipation of the present situation, in order that she might with more plausibility be called as a witness to support the complainant's claim."

Eliminating the testimony of Miracle and the testimony of Huddleston, there is but little left to support plaintiff's petition for reformation of the deed. Certainly, there is not sufficient evidence left which would justify the reformation of an instrument of a person since deceased. The established rule is that courts should move with extreme caution in rewriting instruments solemnly executed by persons whose lips are afterward silenced in death. Even as to testimony not falling strictly within the prohibited class, the acceptance of it without some reservation must be carefully guarded, because, even as to apparently disinterested witnesses, this testimony is received without any hope or chance of its being directly disputed; the party attempting to disprove it is confined to surrounding circumstances only.

In all probability, the facts in this case are just as related by plaintiff and Huddleston, but, in order to reach that conclusion, we must resort to their testimony in connection, of course, with some corroborating circumstances, such as the language of the deeds, which is identical as to the interests conveyed; and the further fact that plaintiff apparently assumed absolute possession and control of the premises.

Notwithstanding the elastic nature of equity and its all-embracing doctrine, it, as well as law, is governed by certain necessary fixed rules; and where it is not controlled by its own specific rules, equity follows the law; and, therefore, in this case plaintiff must accept the wholesome rule of necessity founded on public policy that a cause of action cannot be predicated upon testimony falling within the class prohibited by the statutes. Furthermore, a court of equity will hesitate to grant relief, or relief will be more readily denied, in the case of the death of the party to the transaction, than in other cases, since the death of the party against whom the action would have

been brought had he lived, usually presents difficulties in procuring evidence and conducting a defense other than those arising from the mere loss of his testimony. 21 Corpus Juris, Subject, "Equity," p. 234.

It is the rule fully established in this state, as well as elsewhere, that:

"To justify the reformation of a deed, failing to conform to the agreement of the parties thereto, through mutual mistake, the proof must be clear, unequivocal and decisive. Mere preponderance of the testimony is not enough, the proof must establish the facts to a moral certainty, and take the case out of the range of reasonable controversy, but need not go beyond a possibility of controversy." Dockstader v. Gibbs, 34 Okla. 497, 126 Pac. 229; Davidson v. Bailey, 53 Okla. 91, 155 Pac. 511; Cleveland v. Rankin, 48 Okla. 99, 149 Pac. 1131; Burch v. Staples, 70 Okla. 245, 174 Pac. 271; Rochelle v. Anderson, 113 Okla. 137, 243 Pac. 528.

It necessarily follows that the judgment in this case should be and is hereby affirmed.

BENNETT, JEFFREY, HERR, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1, 2) 28 R. C. L. p. 492; 3 R. C. L. Supp. p. 1578; 5 R. C. L. Supp. p. 1541; 6 R. C. L. Supp. p. 1729. See "Reformation of Instruments," 34 Cyc. p. 986, n. 35. "Witnesses," 40 Cyc. p. 2272, n. 10; p. 2303, n. 22.